EDWIN C. BARRINGER *vs.* OCEAN STEAMSHIP COMPANY OF SAVANNAH.

Suffolk.    November 29, 1921. — February 28, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Food.    Contract,* Implied.    *Carrier,* Of passengers.    *Evidence,* Presumptions and burden of proof.·

At the trial of an action of contract against a steamship company for damages resulting from the eating of unwholesome food alleged to have been sold and served by the defendant to the plaintiff while he was a passenger upon one of its steamships, there was evidence tending to show that the plaintiff boarded the boat in an afternoon, not having had anything to eat since his breakfast that morning; that he ate dinner that night on the boat at six o'clock; that the next morning he had no breakfast and was seasick; that during the rest of the voyage he was in good health and after the first morning on shipboard was able to "go down and take meals;" that at about five o'clock in the afternoon of the fourth day of the voyage he had lunch or supper; that he thought soup was served, did not recall whether he ate fruit or dessert but remembered eating some cold meat which "did n't taste very good to" him; that he remained on the boat until about fifteen minutes after seven o'clock that evening when he went ashore and to his home; that he went to a theatre in the evening and to a café with a friend before retiring at twelve o'clock that night; that, although he smoked during the evening, he neither ate nor drank anything after leaving the boat and that at about four o'clock in the morning he was taken violently ill.  He was attended by a physician who died before the trial.  Another physician, testifying as an expert, stated that the described circumstances of the plaintiff's illness presented "a classical picture of food poisoning; that the term ptomaine poisoning was not now used; that the incubation period for food poisoning was from eight to twenty hours; that it was less than twenty-four hours; that it would be out of the question for diseased food to remain in a person's stomach for a period of from forty-eight to seventy-two hours before he would feel any effects from it" and that, in his opinion, the plaintiff's illness was caused by poisoning from food eaten on the boat the last afternoon he was aboard.  *Held,* that a finding for the plaintiff was warranted.

TORT OR CONTRACT, with a declaration in two counts, the first in tort and the second in contract, for injuries alleged to have

resulted to the plaintiff from eating unwholesome food furnished by the defendant to him when he was a passenger on a boat of the defendant running from Savannah in the State of Georgia to Boston. Writ dated August 27, 1915.

In the Superior Court, the action was heard by *McLaughlin,* J., without a jury. The plaintiff testified that he ate breakfast in Jacksonville in the State of Florida on the morning of June 17, 1915, that he boarded the defendant's boat at about half past four o'clock in the afternoon, and that he had dinner on the boat at six o'clock that evening. Other material evidence is described in the opinion. At the close of the evidence, the plaintiff elected to rely solely upon the count in contract, and the defendant moved that a finding be entered in its favor. The motion was denied. The judge found for the plaintiff in the sum of $800; and the defendant alleged exceptions.

The case was submitted on briefs.

*A. H. Russell,* for the defendant.

*W. S. Patterson,* for the plaintiff.

CARROLL, J. The plaintiff was a passenger on a vessel owned and operated by the defendant, which left Savannah on June 17, 1915, and arrived in Boston about seven o'clock in the evening of June 20. The action is in contract, the plaintiff alleging that food was served by the defendant and eaten by the plaintiff which was unwholesome and "contained foreign matter" and was "otherwise unfit to be eaten whereby the plaintiff . . . was injured," and "made sick." At the close of the evidence, the defendant moved that a finding be entered in its favor. This motion was denied. The judge, sitting without a jury, found for the plaintiff, and the defendant excepted.

There was evidence that the plaintiff ate his dinner about six o'clock on the night of June 17; that the next morning he had no breakfast and was seasick; that during the rest of the voyage he was in good health and after the first morning on shipboard was able to "go down and take meals;" that Sunday, June 20, about five o'clock, he had lunch or supper; that he thought soup was served, did not recall whether he ate fruit or dessert but remembered eating some cold meat which "didn't taste very good to . . . [him];" that he remained on the boat until about fifteen minutes after seven o'clock that evening, when he pro-

ceeded to the elevated station and thence to his room; that he went to the theatre in the evening and to a café with a friend, and about twelve o'clock went to bed; that he had eaten or drunk nothing after he departed from the boat, but had been smoking during the evening; that about four o'clock the next morning he was suffering from cramps, was covered with perspiration, and was in pain due to great distress in his intestines; that he did not recall anything until some time after eight o'clock in the morning when "he was conscious that the landlady was holding his head and that he was vomiting and that there was a doctor in the room;" that the doctor attended him twice a day for five days; that he had a high temperature, could not retain food, and suffered with cramps.  He testified that he never before suffered from indigestion.

The doctor who attended the plaintiff was dead at the time of the trial; but a physician testified that, from the plaintiff's story and what he had heard on the witness stand, the plaintiff presented to him "a classical picture of food poisoning; that the term ptomaine poisoning was not now used; that the incubation period for food poisoning was from eight to twenty hours; that it was less than twenty-four hours; that it would be out of the question for diseased food to remain in a person's stomach for a period of from forty-eight to seventy-two hours before he would feel any effects from it."  He further testified that in his opinion the plaintiff's illness was caused by food poisoning, and was caused by the food he ate Sunday afternoon on the boat.

It was decided in *Friend* v. *Childs Dining Hall Co.* 231 Mass. 65, that, when food is furnished by a restaurant keeper in response to the order of a guest, there is an implied contract by the restaurant keeper that the food is fit to eat.  At page 73 of that opinion it was said: "On principle and on authority it seems to us that the liability of the proprietor of an eating house to his guest for serving bad food rests on an implied term of the contract and does not sound exclusively in tort, although of course he may be held for negligence if that is proved."  And at page 75: "Our conclusion is that, whether the transaction established on the evidence between the plaintiff and the defendant be treated as a sale of food, or as a contract for entertainment where the defendant simply 'utters his provision' (to use the neat phrase

of *Parker* v. *Flint,* 12 Mod. 254, employed more than two centuries ago) for the benefit of the plaintiff, there was a case to be submitted to the jury." This principle is applicable to the case at bar. The defendant contracted to furnish the plaintiff with proper food, and if the defendant failed in this duty it was responsible to the plaintiff in damages.

The difficulty in the case is to determine whether there was any evidence that the defendant furnished the plaintiff with unwholesome food which caused his sickness. On this point the evidence is very slight; but in our opinion, taking all the testimony into consideration, it could not be ruled as matter of law that there was no evidence that the plaintiff's injuries resulted from the improper food furnished by the defendant. It could have been found that he was in good health when he became a passenger on the defendant's steamship; that the white meat he ate at lunch on Sunday afternoon "didn't taste good" to him; and in answer to the question, "You knew you had supper on the Savannah vessel or boat; that you spent the evening with a friend at the theatre; that you smoked more or less; that you had been pretty seasick a day or two before; that you carried two heavy cases home and the next morning about eleven hours later you woke up with this attack. Have you any other cause or reason to connect your attack with the Savannah Steamship Lines than what I have spoken of?" He replied, "Excepting that white meat I didn't think that was very good, whatever it was." With this evidence and the testimony of the physician that in his opinion the plaintiff's illness was caused by the food he ate Sunday afternoon on the boat, we cannot say there was no evidence to support the plaintiff's contention. The evidence, as we have said, was very meagre; but the credibility of the witnesses was for the trial judge, and if he believed them he could find that the plaintiff's case was proved.

*Exceptions overruled.*