ORICE M. GRACEY *vs.* WALDORF SYSTEM, INCORPORATED.

Suffolk.        December 8, 1924. — January 28, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Food. Contract,* Implied. *Negligence,* In conduct of restaurant. *Evidence,* Matter of conjecture.

At the trial of an action of contract against the proprietor of a restaurant for damages alleged to have resulted from the eating of unwholesome food served to the plaintiff by the defendant, the plaintiff's evidence tended merely to show that he ate a lunch served by the defendant consisting of chicken pie, two rolls and coffee; that in three or four hours "he felt sick to his stomach and vomited," returned home and called a physician; that his stomach and intestines were washed with hot water; that for three or four days he had "pain in his bowels and was weak," and was sick for a week; that for his breakfast on the morning preceding the lunch at the defendant's restaurant, he had had coffee, shredded wheat and a banana, and on the previous night had had "toast, tea, and a scrambled egg." A physician testified to prescribing for the plaintiff on the telephone and to a visit to him the next morning, when he found him sick and diagnosed the case as "ptomaine poisoning," which might be caused by "anything" putrefied "in the meat line." *Held,* that the evidence left the cause of the plaintiff's sickness to conjecture and did not warrant a finding for the plaintiff. Distinguishing *Barringer* v. *Ocean Steamship Co. of Savannah,* 240 Mass. 405.

CONTRACT for damages alleged to have resulted from unwholesome food eaten by the plaintiff in a restaurant conducted by the defendant. Writ in the Municipal Court of the City of Boston dated April 7, 1924.

Material evidence at the trial in the Municipal Court is described in the opinion. The defendant asked for a ruling that, on all the evidence, the plaintiff was not entitled to

recover. The ruling was refused. There was a finding for the plaintiff in the sum of $100 and the judge, at the defendant's request, reported the action to the Appellate Division, who ordered the report dismissed. The defendant appealed.

*J. J. Mulcahy,* for the defendant.

*C. E. Nordstrom,* for the plaintiff, submitted a brief.

CARROLL, J. In this action of contract the plaintiff seeks to recover for injuries resulting from the eating of unwholesome food, furnished to him, in response to his order, by the defendant at its restaurant.

The plaintiff testified that on March 1, 1924, he ordered chicken pie, two rolls, and a cup of coffee; that he ate the food, then made a few business calls, and in three or four hours after having "eaten his lunch . . . he felt sick to his stomach and vomited"; that on his return to his home he called a doctor; that his stomach and intestines were washed with hot water; that he was " sick for a week and three or four days the following week " had " pain in his bowels and was weak "; that on the morning of March 1, 1924, for his breakfast he had a cup of coffee, shredded wheat and a banana; that on the night previous he had " toast, tea and a scrambled egg."

His physician testified that on the night of March 1, 1924, she " told some one of the plaintiff's family over the phone to wash out the plaintiff's stomach and bowels and to give him all the water he could drink until he vomited "; that the next morning she visited the plaintiff and found him sick and weak; that she diagnosed the case as ptomaine poisoning; that ptomaine poisoning means " If a person has had chicken or anything of that sort that is not fresh, it becomes putrefied and if they take it to the stomach, it causes nausea and vomiting." To the question " How many causes are there for ptomaine poisoning? " she replied, " There may be so many different circumstances you could not tell. They have to have food that is not good or properly prepared in the stomach. Ptomaine poisoning would be from eating meat. No fruits cause it. Anything in the meat line."

The defendant's district manager testified that on the day in question the defendant served approximately two thousand chicken pies, and received no complaints other than the present case. A physician called by the defendant said that the term ptomaine poisoning is too general a term to mean anything definite. "Decomposed milk, cream or anything of that sort could cause so-called ptomaine poisoning." The request of the defendant that the plaintiff could not recover was denied.

In *Barringer* v. *Ocean Steamship Co. of Savannah*, 240 Mass. 405, there was evidence that the plaintiff was in good health when he became a passenger on the defendant's steamship; that the white meat he ate at lunch on the ship about five o'clock on June 20 "didn't taste very good to" him; that he left the boat about seven o'clock that evening; that he neither ate nor drank anything after he departed, about four o'clock the next morning he was suffering from cramps, was covered with perspiration, and was in great distress in his intestines. In addition to this, his physician gave it as his opinion that the plaintiff's illness was caused by the food he ate Sunday on the boat. In the Barringer case the evidence showing that the defendant furnished unwholesome food was very slight, but in view of the evidence above referred to, it was decided that it could not be ruled that as matter of law there was no evidence that the plaintiff's injuries resulted from the improper food furnished by the defendant.

In the case at bar there was no evidence that the plaintiff's illness was caused by the food furnished by the defendant, or that the food was unwholesome. Although he was not sick until three or four hours after he ate the meal, we know nothing further about the condition of his health on March 1. There is nothing to show that the food tasted bad or appeared to be unfit for use. His physician did not give it as her opinion that the plaintiff's illness was caused by the food furnished by the defendant; she stated that there are so many different circumstances that the cause of ptomaine poisoning could not be determined. And there is nothing to show within what time the effects of eating

improper food would appear; whether these effects would appear immediately, or within what time, the evidence does not disclose. There are different causes for ptomaine poisoning, as the plaintiff's physician testified; it may have been caused in the case at bar by food eaten before the plaintiff visited the defendant's eating place, by something he ate or drank after he ate the food in question; and it may have been caused by the food of the defendant; but this is conjecture and not proof. There is no evidence which establishes the fact that the plaintiff was made sick by the food he ate at the defendant's restaurant, nor is there anything in the evidence from which such an inference could reasonably be drawn.

The order dismissing the report must be reversed.

*Judgment for the defendant.*