CHARLES E. LYNCH *vs.* THE HOTEL BOND COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 3d—decided June 27th, 1933.

*Ernest W. McCormick,* for the appellant (plaintiff).

*Henry H. Hunt,* with whom, on the brief, was *Norman Yellin,* for the appellee (defendant).

BANKS, J.  The complaint alleges that the defendant operates a hotel and dining room, that it served the plaintiff with food in its dining room which it impliedly warranted to be wholesome and fit for human consumption, that in fact the food was not wholesome and the plaintiff became ill as a result of eating it. The defendant demurred to the complaint upon the ground, in substance, that the furnishing of food to the plaintiff did not involve a sale of the food, and that there was no implied warranty by the defendant that it was fit for human consumption. The court sustained the demurrer, and the correctness of that ruling is the sole question upon this appeal.

This precise question was before us in the case of *Merrill* v. *Hodson,* 88 Conn. 314, 91 Atl. 533, in which we held that the furnishing of food by a restaurant keeper to a guest for immediate consumption upon the premises did not involve a sale of the food so furnished, and that there was no implied warranty that it was fit and wholesome. The plaintiff earnestly urges upon us a reëxamination of the question in the light of more recent decisions, some of which have declined to follow the reasoning in that case.

As was stated in the *Merrill* case, we know of no case prior to that in which an attempt had been made to recover for the harmful consequences resulting from unwholesome food or drink, supplied by the keeper of an inn or restaurant, upon the strength of an implied

warranty of quality. Such occurrences are not un-common, and it is perhaps not without significance that recovery was uniformly sought in actions sounding in tort. That recovery can be had based upon negligence in the preparation and service of food and drink in a hotel or restaurant is not questioned. In such an action it has generally been held that the duty of the keeper of a hotel or restaurant is to exercise the same degree of care in the selection and preparation of food as would be exercised by a reasonably prudent man skilled in such art. He is not an insurer of the quality of the food served by him, but is liable only if he has failed to exercise the degree of care required of him in its preparation and service. *Sheffer* v. *Willoughby,* 163 Ill. 518, 45 N. E. 253; *Travis* v. *Louisville & N. R. Co.,* 183 Ala. 415, 62 So. 851; *Ash* v. *Childs Dining Hall Co.,* 231 Mass. 86, 120 N. E. 396; *Horn & Hardart Baking Co.* v. *Lieber,* 25 Fed. (2d) 449; Beale, Innkeepers, §§ 169, 302; 26 C. J. 786; 11 R. C. L. 1119.

It is the contention of the plaintiff that in addition to the liability in tort there exists in such cases a liability in contract arising out of an implied warranty of the wholesomeness of the food furnished, which in effect constitutes the defendant an insurer of the quality of the food. This contention is based primarily upon the assumption that the transaction constitutes a sale of the food supplied, and the well recognized rule that, in the case of the sale of food for immediate domestic uses, there arises, as between dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten. *Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 259, 161 Atl. 385; General Statutes, § 4635.

There is no occasion to elaborate upon the discussion in the well reasoned opinion of CHIEF JUSTICE PREN-

TICE in *Merrill* v. *Hodson*. The opinion clearly draws the distinction between a sale of personal property which contemplates a transfer of title to a specific article, and the furnishing of food and drink in a restaurant when the "essence of the transaction is service in the satisfaction of a human need or desire." The business of a hotel or restaurant is not that of a dealer in commodities. The food in the ice box is not kept there for sale, but to be cooked, if required, and served to the guests of the establishment as ordered. The only thing that is "sold" is the personal service rendered in the preparation and presentation of the food, the various essentials to its comfortable consumption or other facilities provided, and the privilege of consuming so much of the meal ordered as the guest may desire. Service is the predominant feature of the transaction. If there is a transfer of title to the food actually consumed, it is merely incidental and does not constitute a sale of goods within the contemplation of the Sales Act, and there is therefore no implied warranty of its quality under the law of sales. *Kenney* v. *Wong Len*, 81 N. H. 427, 128 Atl. 343; *Nisky* v. *Childs Co.*, 103 N. J. L. 464, 135 Atl. 805; *Loucks* v. *Morley*, 39 Cal. App. 570, 179 Pac. 529; *Valeri* v. *Pullman Co.*, 218 Fed. 519. See annotations in 5 A. L. R. 1115; 35 A. L. R. 921; 50 A. L. R. 231, and cases there cited.

There are no doubt instances where food is furnished to be eaten upon the premises in which the business of the establishment is not that of an innkeeper or restaurant where the transaction partakes of the nature of a sale, as when a drug store sells sandwiches, or other articles of food, which may be either taken away or eaten on the premises. In *Race* v. *Krum*, 222 N. Y. 410, 118 N. E. 853, the plaintiff became ill after eating ice cream served in defendant's drug store, and brought suit for breach of an implied warranty that the ice

cream was fit for consumption. The court pointed out that the case was not one involving the liability of the keeper of a hotel or restaurant, and held the defendant liable under the rule that in sales by a retail dealer of articles of food for immediate use there is an implied warranty of wholesomeness. In the later case of *Temple* v. *Keeler,* 238 N. Y. 344, 144 N. E. 635, the court, in a brief opinion, extended the doctrine of *Race* v. *Krum* to a case in which the plaintiff became ill after eating fish served in defendant's restaurant, stating that it could not logically differentiate the facts in the two cases. A similar conclusion was reached in *Friend* v. *Childs Dining Hall Co.,* 231 Mass. 65, 120 N. E. 407, in which it was held by a divided court that there was no distinction between the liability of a retail dealer in meat for immediate consumption and of a victualer who serves food to guests to be eaten forthwith at his own table. Conceding, in that case, that the larger number of decisions hold that the liability of a restaurant keeper for furnishing deleterious food rests upon negligence, the Massachusetts court on the same day handed down the decision in *Ash* v. *Childs Dining Hall Co., supra,* an action in tort against the same defendant, in which it held that the duty resting upon the keeper of a restaurant or other eating place was "to use due care to furnish wholesome food, fit to eat." The fundamental question is the extent of the duty owed by the restaurant keeper to his guest—whether it is to use due care to furnish wholesome food, as has always been held in actions in tort, or is practically that of an insurer, as the New York and Massachusetts cases hold when the action is in contract, upon the theory that the transaction is a sale. It would seem that the legal obligation ought not to vary with the form of action adopted. The innkeeper's duty to use due care to furnish wholesome food to his guests should

not be extended to that of an insurer upon the theory, contrary to the fact, that the business in which he is engaged is that of selling meats, vegetables and other foods within the terms of the Sales Act.

Regardless of whether or not the transaction is a sale, it is said that, upon grounds of public policy, courts should hold the innkeeper and the restaurant keeper to warrant the wholesomeness of the food which they serve—that his opportunity to discover and provide against deleterious food is as ample as is that of a retail dealer in food stuffs, and that he should be held to the same liability. We are not prepared to say that the protection of the public requires the imposition upon the innkeeper of absolute liability for the quality of the food served by him, contrary to the long-established rule that his obligation is limited to the exercise of due care in the preparation and service of the food furnished to his guests.

There is no error.

In this opinion MALTBIE, C. J., HINMAN and AVERY, Js., concurred.

HAINES, J. (dissenting). The majority opinion is a clear and undoubtedly sound statement of the law in this State, as laid down in *Merrill* v. *Hodson, supra.* A conviction, however, that the principle underlying that decision should be reëxamined and tested by modern conditions and the requirements of a sound public policy, prompts the following suggestions. That was the first case in this State where the question presented by this appeal was squarely raised, as was *Friend* v. *Childs Dining Hall Co.*, in Massachusetts, 231 Mass. 65, 120 N. E. 407. This court held that the furnishing of food by a restaurant keeper to a customer was an

act of service only and not a sale of the food, any liability therefor sounding only in tort and not in contract, while the Massachusetts court held the contrary.

The principle adopted in the *Merrill* case was based upon the old English conception of the status of an inn or tavern keeper who furnished his guest with stabling, food and care for his horse, and rooms, bed, food and drink for the guest while he remained such. It was logical to treat this as service in its entirety, and to impose upon the innkeeper the obligation only of due care in rendering it, and he was generally paid a stipulated sum for such entertainment. The justification for the view that food and drink thus served was not sold, would seem to have largely disappeared with the radically changed conditions of modern life in this country.

One of the impressive trends of present day legislation is in the direction of protecting the consumer of food and drink, reflected in numerous laws heretofore nonexistent, requiring the dispenser to see to it that the articles he furnishes are not adulterated, deleterious or unwholesome. The consumer has little opportunity to protect himself and if one or the other is to suffer from the unwholesome character of the article dispensed, it should not be the consumer. He has requested and paid for a wholesome article and common fairness requires that he who receives the consideration should assume the risk, especially as the latter and not the consumer has the opportunity to determine the quality of the article.

This is the sound principle which underlies such cases as that of *Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 161 Atl. 385, where a grocer was so held in selling corned beef to a person to be used for food, even though the beef was in a sealed can when sold. Yet the *Merrill* case would require us to say that where

corned beef was sold by a hotel or restaurant keeper for food, he does not guarantee its wholesomeness at all even though he have full opportunity to first inspect it to determine its quality. Such is the inconsistency and incongruity in the law which is brought about by adherence to a technical legal definition which makes this act of the hotel keeper a service while the act of the grocer is a sale. Thus a purchaser of ice cream at a drug store is protected by the dispenser's guaranty that the cream is wholesome, while in a purchase of ice cream at the restaurant next door, he obtains no guaranty of wholesomeness.

Many courts of last resort in this country have recognized that modern conditions and a sound public policy call for a rejection of this distinction. It would seem that the reason for the ancient rule has passed with the conditions which brought it into existence. The citizen may well wonder at the intricacies of the law when told that he is protected in the purchase of ice cream at a drug store which he consumes upon the premises, using the facilities there provided, but may be poisoned and denied a remedy when he does exactly the same thing in a restaurant. He has just cause for doubting that "law is founded on reason."

We find nowhere a better statement of what we conceive to be the modern doctrine than that in *Friend* v. *Childs Dining Hall Co., supra,* wherein that court, speaking by Chief Justice Rugg, says (p. 73): "The guest of the keeper of an eating house or of an innkeeper is quite as helpless to protect himself against deleterious food or drink as is the purchaser of a fowl from a provision dealer. The opportunity for an innkeeper or a restaurant keeper, who prepares and serves food to his guest, to discover and provide against deleterious food is at least as ample as is that of the retail dealer in foodstuffs. The evil consequences in

the one case are of the same general character as in the other. Both concern the health and physical comfort and safety of human beings. On principle and on authority it seems to us that the liability of the proprietor of an eating house to his guest for serving bad food rests on an implied term of the contract and does not sound exclusively in tort, although of course he may be held for negligence if that is proved. . . . Even if there were no common-law authority (which there is, as already pointed out), it would not be practicable to establish a distinction upon this point which could be supported in reason, between the liability of a retail dealer in meat for immediate consumption and of a victualer who serves food to guests to be eaten forthwith at his own table. Every argument which supports liability of the former tends to sustain the liability of the latter with at least equal cogency. They appear to us to rest upon the same footing in principle."

This conclusion is consistently adhered to in Massachusetts and some other States, and is looked upon with favor in others. *Friend* v. *Childs Dining Hall Co.*, 231 Mass. 65, 120 N. E. 407; *Barringer* v. *Ocean S. S. Co.*, 240 Mass. 405, 134 N. E. 265; *Gracey* v. *Waldorf System, Inc.*, 251 Mass. 76, 146 N. E. 232; *Smith* v. *Gerrish*, 256 Mass. 183, 152 N. E. 318; *Race* v. *Krum*, 222 N. Y. 410, 118 N. E. 853; *Leahy* v. *Essex Co.*, 164 App. Div. 903, 148 N. Y. S. 1063; *Muller* v. *Childs Co.*, 185 App. Div. 881, 171 N. Y. S. 541; *Temple* v. *Keeler*, 238 N. Y. 344, 144 N. E. 635; *Barrington* v. *Hotel Astor*, 184 App. Div. 317, 171 N. Y. S. 840; *Greenwood* v. *Thompson Co.*, 213 Ill. App. 371; *Heise* v. *Gillette*, 83 Ind. App. 551, 149 N. E. 182; *Bark* v. *Dixson*, 115 Minn. 172, 131 N. W. 1078; *Doyle* v. *Fuerst & Kraemer, Ltd.*, 129 La. 838, 846, 56 So. 906; *Clark Restaurant Co.* v. *Simmons*, 29 Ohio App. 220, 163 N. E. 210. In *Smith* v. *Carlos*, 215 Mo. App. 488, 490, 247

S. W. 468, it is said: "The trend of the times is to require eating houses to be as sanitary as possible, and to protect the public as far as can be by inspections, tests, etc. The importance of pure food to the public, and the inability of a guest to see or examine his food prior to its preparation and cooking, of necessity requires that one who holds himself out as a public furnisher of food and an expert in producing and preparing the same be held as an insurer against injury occasioned by a failure to furnish wholesome and pure food to eat."

"Even though the transaction is not a sale, every argument for implying a warranty in the sale of food is applicable with even greater force to the serving of food to a guest or customer at an inn or restaurant. The basis of implied warranty is justifiable reliance on the judgment or skill of the warrantor, and to charge the seller of an unopened can of food for the consequences of the inferiority of the contents of the can, and to hold free from liability a restaurant-keeper who opens the can on his premises and serves its contents to customers, would be a strange inconsistency." 1 Williston, Sales (2d Ed.) p. 485, § 242b. Similar reasoning is employed in an article in the Yale Law Journal, Vol. 27, p. 1068. This is precisely the position in which our contrasting decisions in *Merrill* v. *Hodson* and in *Burkhardt* v. *Armour & Co.* leave the matter. For these reasons, it is my conviction that *Merrill* v. *Hodson* should be overruled and that the present decision should conform to the better reasoning and sounder public policy reflected in the authorities above cited.