# Wytheville

## SHEP W. COLONNA v. ROSEDALE DAIRY COMPANY, INC., ETC.

June 11, 1936.

Present, Campbell, C. J., and Holt, Gregory, Browning, Chinn and Eggleston, JJ.

The opinion states the case.

*Nelms & Colonna,* for the plaintiff in error.

*H. M. Woodward,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

On February 21, 1933, the Rosedale Dairy Company sold to M. S. Colonna milk contaminated with the germs of Malta Fever. Colonna had been purchasing milk from this dairy for some time, buying it for ordinary domestic uses in his household. Shep W. Colonna, son of M. S. Colonna, lived with his father and was a member of his household, and it is the son who was made ill by drinking this infected milk. He is the plaintiff here. His notice of motion for judgment was filed on February 24, 1934. It consists of two counts, one upon contract and one in tort. On motion of the defendant he was required to amend the contract count and to state in the amendment whether he relied upon an express or upon an implied warranty. This he did over protest and charged that the warranty was implied. There is no merit in this protest.

The defendant demurred to the original notice and to it as amended, and among other objections raised by this demurrer it is said that there was a misjoiner in that there was one count on contract and another in tort, and for the further reason that they were barred by the statute of limitations.

Tort actions like this must be brought within one year

after the right to bring the same shall have first accrued. Code, section 5818. The second count was stricken out and as to this no error is assigned. By order of September 25, 1934, there was final judgment for the defendant on demurrer.

Plaintiff in his fourth assignment of error said:

"The court by its order entered September 25, 1934 (R., p. 14), erred in sustaining the defendant's demurrer upon the grounds, (1) that no privity of contract existed between the plaintiff and defendant, and (2) that there was no implied warranty on the part of the defendant of absolute freedom from germs alleged to have been contained in said milk."

These assignments go to the heart of this case. Is there here any implied warranty?

"In 3 Black. Com. 165, it is stated as a sound and elementary proposition that in contracts for provisions it is always implied that they are wholesome, and if they are not, case lies to recover damages for the deceit. In the sale of provisions for domestic use, the vendor is bound to know that they are sound and wholesome at his peril. This is a principle not only salutary, but necessary to the preservation of health and life." *Van Bracklin* v. *Fonda,* 12 Johns. (N. Y.) 468, 7 Am. Dec. 339.

This common-law rule has been approved by many text writers and has been upheld by the decisions of many courts.

■ "Sale of Provisions; General Rule.—An exception to the general rule that a warranty of quality will not be implied has been recognized, from an early date, in the case of a sale of provisions by a dealer for immediate domestic use, and it is generally held in such a case that a warranty of soundness or wholesomeness will be implied." 24 R. C. L. 195.

■ "A retail dealer in provisions is liable in consequential damages to a person injured by the unwholesomeness or poisonous quality of food sold direct to him for immediate consumption, where in making the purchase

the purchaser relies on the skill and judgment of the dealer in selecting the same." Note, 16 Ann. Cas. 497.

"The preponderance, at least, of modern authorities, is to the effect that, upon the sale of food to be immediately put to domestic uses, there is, as between the dealer and the consumer, an implied warranty that such food is wholesome and fit to be eaten. This rule proceeds upon the assumption that the seller has some means of knowledge, opportunities for inspection, or sources of information which are not shared by the purchaser, in consequence of which, when the seller knows that the food was bought for consumption, he warrants as a matter of law that the goods are fit for that purpose." Note, 90 A. L. R., p. 1270.

See also, an extended note in 5 A. L. R., p. 1115, and 25 C. J., p. 783.

This subject has been carefully reviewed by Rugg, C. J., in *Friend* v. *Childs Dining Hall Co.,* 231 Mass. 65, 120 N. E. 407, 409, 5 A. L. R. 1100. He there restates the Old English rule: "* * * 'if a man goes into a tavern for refreshment, and corrupt drink or meat is there sold to him, which occasions his sickness, an action clearly lies against the tavern keeper * * * an action lies against him without express warranty, for it is a warranty in law.' *Burnby* v. *Bollett,* 16 Mees. & W. 644, 646, 647, 654 [153 Eng. Reprint, 1348], where are the references to numerous older cases." In this case there was a dissent, not because this rule did not apply to retail dealers but upon the ground that it did not apply to the innkeeper.

In *Race* v. *Krum,* 222 N. Y. 410, 118 N. E. 853, 854, L. R. A. 1918F, 1172, it is said:

"The general rule, established by the weight of authority in the United States and England, is that, accompanying all sales by a retail dealer of articles of food for immediate use, there is an implied warranty that the same is fit for human consumption."

We find nothing in *Gimenez* v. *Great Atlantic & Pacific Tea Co.,* 264 N. Y. 390, 191 N. E. 27, which weakens this

statement. It was there held that crab meat sold by a retailer to a customer by implication warranted it to be fit for human consumption. It is true that this was under a New York statute, Personal Property Law (Consol. Laws, ch. 41), section 96, but that statute in this particular was declaratory of what the law had there been since the early case of *Van Bracklin* v. *Fonda, supra.*

In the late case of *Great Atlantic & Pacific Tea Co.* v. *Eiseman*, 259 Ky. 103, 81 S. W. (2d) 900, 901, 903, the court, in commenting upon a statute (Ky. St., section 2651b-15, subd. 1) reading as follows: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose," said, that it "embodies the principle of the common-law governing sales by the retailer to the purchasing customer of provision in a visible condition for his immediate domestic use.".

Another very recent case is that of *Beyer* v. *Coca-Cola Bottling Co.* (Mo. App.), 75 S. W. (2d) 642, 645. There the question of proof of warranty came up. The court said that impliedly followed from proof of sale of the product designed for immediate consumption.

This general rule was also recognized in *F. W. Woolworth Co.* v. *Wilson* (C. C. A.), 74 F. (2d) 439, 441, 98 A. L. R. 681, where Circuit Judge Sibley said:

"In a sale at common-law there was generally no warranty of quality or fitness implied, but *caveat emptor* was the rule. An exception obtained when a dealer sold food for immediate domestic use, * * *."

This rule as to sale of food for immediate consumption, that is for immediate domestic use, is spoken of as well recognized in *Lynch* v. *Hotel Bond Co.*, 117 Conn. 128, 167 Atl. 99.

"The consequences resulting from the sale of an impure or poison food or beverage may be so disastrous to

the health of the consumer that public safety demands that there should be an implied warranty of its fitness for human consumption, and the best-reasoned authorities hold this to be the law in cases of this character." *Eisenbeiss* v. *Payne* (1933), 42 Ariz. 262, 25 P. (2d) 162, 163, 166.

See also, *Mix* v. *Ingersoll Candy Co.*, et al. (Cal. App.), 49 P. (2d) 877; *Flessher* v. *Carstens Packing Co.*, 93 Wash. 48, 160 Pac. 14; *Nisky* v. *Childs Company*, 103 N. J. Law 464, 135 Atl. 805, 50 A. L. R. 227; *Cudahy Packing Co.* v. *Baskin*, 170 Miss. 834, 155 So. 217; *Fantroy* v. *Schirmer* (Mo. App.), 296 S. W. 235; *McPherson* v. *Capuano & Co.*, 31 Ga. App. 82, 121 S. E. 580.

█ Where a householder from day to day buys milk from a dealer there is no occasion for him to tell of the purposes of his purchase. That is made plain by the transaction itself which charges this retail dealer with knowledge. *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70, 121 N. E. 471. There are cases which hold that negligence and not warranty must be relied upon.

Among those to which we are cited is *Thomason* v. *Ballard & Ballard Co.*, 208 N. C. 1, 179 S. E. 30. There the litigation was between the manufacturer of flour and its ultimate consumer. Moreover the court recognized that the rule in such a case did not apply in its own jurisdiction to transactions between the vendor and the vendee.

The same rule and the same distinction appears in *Pelletier* v. *Dupont*, 124 Me. 269, 128 Atl. 186, 39 A. L. R. 972.

In *Great Atlantic & Pacific Tea Co.* v. *Gwilliams*, 189 Ark. 1037, 76 S. W. (2d) 65, tainted cheese was sold to a plaintiff. The court said that the retailer was not a guarantor, but there the plaintiff charged that the vendor failed to exercise ordinary care. In other words, that was a tort action and not one on contract.

In *Crigger* v. *Coca-Cola Bottling Co.*, 132 Tenn. 545, 179 S. W. 155, L. R. A. 1916B, 877, Ann. Cas. 1917B, 572, litigation was between a manufacturer and an ultimate consumer.

We have no cases in point in Virginia, but principles

applied in *Gerst* v. *Jones & Co.,* 32 Gratt. (73 Va.) 518, 34 Am. Rep. 773, in some measure apply here. Tobacco boxes made of green timber caused tobacco packed in them to mold.

An action for damages was instituted. Judge Staples, in discussing these principles, said:

"In the absence of such warranty (express warranty), the rule of *caveat emptor* must govern. Where, however, the purchaser does not designate any specific article, but orders goods of a particular quality, or for a particular purpose, and that purpose is known to the seller, the presumption is the purchaser relies upon the judgment of the seller; and the latter, by undertaking to furnish the goods, impliedly undertakes they shall be reasonably fit for the purpose for which they are intended; and he will be answerable for any defect in the material, or in the construction, by which the value is diminished. This rule applies with peculiar force where the seller is the manufacturer."

See also, *Universal Motor Co.* v. *Snow,* 149 Va. 690, 140 S. E. 653, 59 A. L. R. 1174. Here the purchaser did not designate any particular source from which this milk must come. It was understood that he expected it to be wholesome milk, and this the vendor knew.

We hold that the doctrine of implied warranty must be applied and for these reasons: It is a rule of the common-law and that law is ours by inheritance; it is a salutary rule, and tends to promote the health of all the people. Pecuniarily the vendor may suffer, but at times the vendee's life itself is at stake, and generally the vendor has opportunities for information as to the wholesomeness of his foodstuff which the vendee can not have. In business for profit he must bear this burden which the law puts upon him.

What is said is to be limited to the facts in this case. We have not undertaken to pass upon the liability of restaurant keepers (*F. W. Woolworth Co.* v. *Wilson* (C. C. A.), 74 F. (2d) 439, 98 A. L. R. 681); nor of farmers

who make sale of their farm products (*Giroux* v. *Stedman,* 145 Mass. 439, 14 N. E. 538, 1 Am. St. Rep. 472); nor of manufacturers who in final form and original packages send their product abroad to the general public. That was the case in *Norfolk Coca-Cola Bottling Works* v. *Krausse* (1934), 162 Va. 107, 173 S. E. 497. It was a tort action and liability on contract was left open. It is still open. The rule which applies to it may or may not apply to retail dealers in domestic trade.

For whose benefit does this implied warranty run? It is a contract and generally speaking contracts are for the protection of those who make them.

"The fact that a seller warrants the condition or quality of a thing sold does not itself according to the better view impose any liability on him to third persons who are in no way a party to the contract. In such a case there is no privity of contract between the seller and such third person, and this precludes any right on his part to any advantage or benefit to be derived from the warranty." 24 R. C. L., p. 158; Williston on Contracts, vol. 2, section 998.

In *Gimenez* v. *Great Atlantic & Pacific Tea Co.,* 264 N. Y. 390, 191 N. E. 27, it appears that a wife bought tainted crab meat and was made ill by its use. She was permitted to recover upon contract, the court being of opinion that there was an implied warranty. The husband also brought suit for consequential damages and put his claim upon contract and not upon negligence, he lost. See also, the leading case of *Chysky* v. *Drake Bros. Co.,* 235 N. Y. 468, 139 N. E. 576, 578, 27 A. L. R. 1533, where the court said: "The general rule is that a manufacturer or seller of food, or other articles of personal property, is not liable to third persons, under an implied warranty, who have no contractual relations with him. The reason for this rule is that privity of contract does not exist between the seller and such third persons, and unless there be privity of contract, there can be no implied warranty. The bene-

fit of a warranty, either express or implied, does not run with a chattel on its resale."

These cases were followed in *Bourcheix* v. *Willow Brook Dairy,* 268 N. Y. 1, 196 N. E. 617, 98 A. L. R. 1492.

In *Gearing* v. *Berkson,* 223 Mass. 257, 111 N. E. 785, L. R. A. 1916D, 1006, it appears that a wife as agent for her husband bought tainted food which made both of them sick. He was permitted to recover on the theory of an implied warranty, but she was not. Neither were consequential damages for consortium allowed, but in *Jackson* v. *Watson & Sons* (1909), 2 K. B. 193, 16 Ann. Cas. 492, a well considered English case, the husband was permitted to recover pecuniary damages in an action on an implied warranty where his wife's death followed from eating tinned salmon. It was said that the services of his wife were of value and that the husband on the contract with him could recover all damages suffered. But even in this case it was a party to the contract who recovered on the contract.

Warranty does not run with the contract. *Connecticut Pie Co.* v. *Lynch,* 61 App. D. C. 81, 57 F. (2d) 447, Court of Appeals, District of Columbia; *Burns* v. *Baldwin-Doherty Co.,* 132 Me. 331, 170 Atl. 511; *Binion* v. *Sasaki,* 5 Cal. App. (2d) 15, 41 Pac. (2d) 585; *Welshausen* v. *Charles Parker Co.,* 83 Conn. 231, 76 Atl. 271; *Dunn* v. *Texas Coca-Cola Bottling Co.* (Tex. Civ. App.), 84 S. W. (2d) 545; *Howson* v. *Foster Beef Co.,* 87 N. H. 200, 177 Atl. 656; *Mazetti* v. *Armour & Co.,* 75 Wash. 322, 135 Pac. 633, Ann. Cas. 1915C, 140, and 48 L. R. A. 213 note.

It has been applied in the case of an automobile sold by the factory to a dealer who in turn sold it to a purchaser for his own use. *Baxter* v. *Ford Motor Co.,* 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521. We do not undertake to pass upon the soundness of this application, for it is not before us. The overwhelming weight of authority is to the effect that it does not apply where a retail dealer sells foodstuff selected by himself

to a purchaser for immediate use. So much for liability on contract.

■ Plainly there can be a recovery if negligence be established. One is always liable for damages occasioned by his negligent act where they could reasonably have been anticipated by a prudent man. *Wyatt* v. *Chesapeake & Potomac Telephone Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386. *Norfolk Coca-Cola Bottling Works* v. *Krausse, supra*, was such a case. That was a tort action brought by an ultimate consumer. It was held that negligence had been established and a recovery was sustained.

■ Limiting our judgment to the case stated, we are of opinion that there was an implied warranty. We do not hold with counsels of perfection. Perfect purity in milk is an unattainable standard, but it must be reasonably fit for human consumption.

■ We are further of opinion that the plaintiff who was not a party to the contract can not claim under it.

We may restate in short form our conclusions:

■ 1. A dealer who sells unwholesome foodstuff for immediate consumption is responsible for any ill effects which may follow therefrom. He is liable for the results of any negligent act of his which should reasonably have been anticipated by a prudent man, and he is also liable on an implied warranty.

■ 2. For negligence he must be sued in tort. On an implied warranty he must be sued on contract, the statute of limitations in such cases being respectively one and three years.

■ 3. For negligence he is liable to one whose hurt could reasonably have been anticipated.

■ On contract he is liable to his vendee but not to sub-vendees or others.

In this case it follows from what has been said that the judgment of the court below must be sustained, and it is so ordered.

*Affirmed.*