Sanborn, J.
This is an action of contract in which the plaintiff seeks to recover damages for personal injuries *191 resulting from the alleged breach of an implied warranty of wholesomeness of canned shrimp purchased of the defendant by the plaintiff.
At the trial there was evidence tending to show the following: On June 23, 1937 the plaintiff went to a store of the defendant Company and asked for two cans of shrimp. She was given two cans of different brands, one can being labelled 11 Salad Brand,” the other “Warsaw Brand.” The next day she opened both cans in preparation for supper. On opening the cans, she observed that the shrimp in the can labelled “Salad Brand,” appeared to be crushed, but she thought nothing of it supposing this brand was put up in that manner by the packer. She washed the contents of both cans, mixed them together in one dish, and later served the mixture without further preparation, except for the addition of some onion. After preparing the shrimp, she prepared boiled rice, mashed potatoes, bread and butter, milk and tea. Then she, and her three children, and one Benjamin Grace and his wife, Mary, sat down to supper and ate the contents of the two cans of shrimp which had been thus mixed together, and the other food above mentioned. While eating the shrimp, the plaintiff noticed that it tasted “mealy” but thought nothing of it, and continued to eat it. Mary Grace also noticed that it tasted mealy. No other characterization of either the appearance or the taste of the' shrimp appears in the reported evidence. At the three meals preceding the meal in question, all six persons had identical food. About thirty minutes after the evening meal on June 24, the plaintiff became sick and began to vomit, and within three hours after the meal, all five others became sick with similar symptoms. A physician, one Dr. Sobel was called and upon his arrival between nine and ten o’clock that night, found the plaintiff in bed, and the other five vomiting, and being told all had eaten shrimp salad, treated them for food poisoning. The illness of the *192 various persons was of varied duration, but none according to Dr. Sobel was confined longer than three days, but the plaintiff testified she was in bed two weeks practically all the time and did not feel well for four to six weeks. Dr. Sobel not being an expert on food poisoning, was not permitted at the trial to express his opinion as to the food which caused the illness, but one Dr. Banks, a specialist in food poisoning and stomach disorders, testified that in his opinion, the shrimp did not and could not have caused the illness and gave his reasons for his opinion. No examination or analysis of the food or the vomitus was made. It was agreed that the defendant was not the packer of either can of shrimp.
Within three days of June 24, the plaintiff was in her attorney’s office. On July 20, 1937, the defendant received from the plaintiff’s attorney, the following letter dated July 19, 1937:
‘ ‘ Gentlemen:
I am writing on behalf of Mrs. Julia Lomba and her brother, Benjamin Grace, Jr., who, with Mr. Grace’s wife and Mrs. Lomba’s three children, ate shrimp purchased from you on Wednesday, June 23rd, and eaten by them Thursday, June 24th, which made them ill and caused them suffering and expense. I. have gone into this matter very carefully with the attending physician and am satisfied that the shrimp you sold was not proper for food.
If you care to adjust this matter without suit I shall be glad to take up the matter with your adjuster and will wait a reasonable time for your response.”
On August 5, 1937, the defendant received a letter from the plaintiff’s attorney dated August 4th, stating that the shrimp complained of was “Salad Brand” shrimp.
Both parties seasonably filed requests for rulings. The, court made a finding for the plaintiff and assessed damages *193 at $500, and filed a statement of findings and rulings, finding as a fact that it was the “Salad Brand” shrimp which caused the illness, and that the notice of breach of warranty required by Gen. Laws, Chap. 106, Sec. 38 was given within a reasonable time.
The action was amended to, and is here considered solely as, an action of contract for breach of warranty. The primary contentions of the defendant are, first, that the evidence was insufficient to warrant a finding that the plaintiff was made ill by the shrimp complained of, and secondly, the plaintiff failed to give the required notice within a reasonable time. The letter of the plaintiff’s attorney under date of August 4, 1937, definitely refers to the “Salad Brand” shrimp as that on which her claim for breach of warranty is based. No claim has been made that the can of “Warsaw Brand” shrimp caused the illness.
That the defendant impliedly warranted the shrimp was proper and fit for human food is well established. Ward vs. Great Atlantic & Pacific Tea Co., 231 Mass. 90. It is equally true that the plaintiff was required to show her illness was probably due to the unwholesomeness of the shrimp. While she was not bound to exclude every other possible cause for her illness, she was obliged to produce such evidence of the unwholesomeness of the shrimp as to warrant the reasonable inference that it, instead of something else caused the illness. Monahan vs. Economy Grocery Stores Corp., 282 Mass. 548. The evidence as to the condition or appearance of the “Salad Brand” shrimp was as follows:— the plaintiff noticed it appeared to be crushed, as did another witness. The plaintiff also noticed the mixture of the two cans of shrimp and the onions tasted “mealy” as did another witness. In no other respect so far as the record shows, did it appear, taste or smell different from the normal or usual canned shrimp, and a finding that it *194 was unfit for human consumption must be based entirely upon the “crushed” appearance of the one can and the “mealy” taste of the mixture, except for such inferences as might be warranted from the fact that six persons became ill after eating several kinds of food of which the shrimp complained of was a part.
It must be assumed that the words used to describe the shrimp were employed in their customary, every day meaning. That it appeared crushed, is of itself without significance. Many' kinds of food are purposely prepared and are sold and used in that condition. The crushed appearance of shrimp can hardly be regarded as indicating that it was poisonous, unwholesome or otherwise unfit for human food. The “mealy” taste of the shrimp mixture likewise means almost nothing as indicating unwholesomeness of the food, and it is to be noted that none of those eating it,, thought anything about it and continued to eat it. There is a total lack of evidence that would definitely and clearly indicate or suggest unwholesomeness, no evidence that the food “tasted bad” or had the appearance of unfitness.
In Barringer vs. Ocean Steamship Co. of Savannah, 240 Mass. 405, the plaintiff testified that the food “didn’t taste good.” In Smith vs. Gerrish, 256 Mass. 184, there was evidence that ‘ ‘ it tasted as if it was not fit to eat. ’ ’ In Schuler? Admtrx. vs. The Union News Co., 1936 Adv. Sh. 1273, the food “tasted bad.” In Johnson vs. Kanavos, 1937 Adv. Sh. 193, the food in question “tasted off color,” “not just right” and “peculiar.” In addition, in many of the decided cases there was medical testimony that the suspected food caused the illness. In the instant case the plaintiff produced no such evidence.
It appears that the trial court made rulings predicated' upon evidence that the food “did not taste right” and “had a peculiar taste” (Plaintiff’s requests #3, 4 and 6). The report, which by its own terms, contains all the evidence- *195 material to the questions reported, sets forth no such evidence, and nothing appears of record upon which to base that conclusion except the “mealy” taste above referred to.
We are of the opinion the evidence does not afford a basis for more than a surmise or conjecture that the particular can of “Salad Brand” shrimp caused the plaintiff’s illness, and that as a matter of law, the plaintiff is not entitled to recover. Carter vs. Goff, 141 Mass. 123, Hillyer vs. Dickinson, 154 Mass. 502. It is, therefore, unnecessary to consider more specifically the various rulings of the trial court, or to decide whether proper notice of the alleged breach of warranty was seasonably given.
The finding for the plaintiff is to be vacated and judgment is to be entered for the defendant.