Rollins, J.
This is an action of tort in which the plaintiff seeks to recover for injuries resulting from eating allegedly unwholesome mackerel which had been processed and packed by the defendant Company.
Most of the facts are set forth in the Findings of Fact and Rulings of Law made by the trial judge, which are as follows :
“The three plaintiffs, husband, wife and son sued in-tort the defendant who is engaged in the business of processing and packing mackerel in cans and selling to various retail dealers.
The plaintiffs contend that the defendant was negligent and careless in that he improperly prepared the cans of mackerel and that it became poisonous.
I find that Mary Brean purchased a can of mackerel at a store on July 18, 1945. Later that day at supper *35 about six P. M. the can of mackerel was opened by her son and the three plaintiffs ate it. Mary Breau ate nothing but the fish for supper. Her husband Josias Breau ate fish and bread. He said that the fish looked dark in the dish but that it smelt and tasted all right. He also drank milk. Borneo Breau had bread and mackerel and nothing to drink. Borneo’s wife had supper with them but did not eat any of the fish and did not become ill.
None of the plaintiffs had lunch together that day. Between supper and 10 p. m. none of the plaintiffs had anything more to eat or drink. At 10 p. m. all three plaintiffs became very ill. They had pains in the stomach, vomiting and diarrhea. A doctor gave injections to all three plaintiffs and they remained ill for several days.
The plaintiff Josias Breau lost a week from his work as mason.
The can purchased in the store by Mary Breau was admitted in evidence and marked Exhibit ‘A’.
The vice-president and manager of the Eastland Food Products, Inc. testified that this empty mackerel can, Exhibit A, bore their code number M L 194; and this code number identified mackerel that was packed by them on Dec. 19,1944.
There were two other full and unopened cans of mackerel from this same lot M L 194 introduced by the plaintiffs. One can Exhibit B was described as being a ‘snapper’. In the canning trade, a ‘snapper’ is a can that had been improperly packed and denotes the presence of an air pocket in the can. The presence of air in the can would cause the contents to spoil and food poisoning would result. There was evidence that there appeared to be no other defect to the Exhibit B can except that it was a ‘snapper’.
The third can Exhibit C was without defect.
By bringing their actions, the plaintiffs assumed the obligation to show that the negligence of the defendant caused their injury. This was an affirmative burden which could not be left to surmise, conjecture or imagination. There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts. While the plaintiff is *36 not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable.
I find that the mackerel was unfit for food and that the plaintiffs, in the exercise of due care, ate it and became poisoned and suffered as a result.
I find that the defendant improperly prepared the mackerel and due to its negligence in packing the same it became poisonous. ’ ’
In addition to the foregoing the Report discloses evidence tending to show the following:
After the mackerel had been eaten by this plaintiff, her son and husband, some remained in the can. This was placed in the ice box where it stayed until two days later, when it was examined by Board of Health Investigators of the City of New Bedford. At the time of this examination there was ice in the refrigerator. One of the Investigators was Roger Dumas. He had had a few months’ experience in his duties as such investigator.
He testified that the mackerel, when he examined it, was “unfit for food”.
The defendant seasonably filed eight requests for rulings. The trial judge acted upon these requests and found for the plaintiff in the sum of $300.
The defendant claiming to be aggrieved by the rulings and refusals to rule, the case was reported to this Appellate Division for determination.
In order to recover the plaintiff must prove—
(1) the mackerel was unwholesome and the eating of it was the probable cause of her illness. Johnson v. Kanavos, 296 Mass. 373, 376, and also (2) the unwholesomeness of the mackerel was the result of the negligence of the defend *37 ant. Crocker v. Baltimore Dairy Lunch Co., 214 Mass. 177, 179.
The evidence tending to prove (1) is as follows:
(a) The mackerel when taken from the can and placed in a dish ‘ ‘looked dark in the dish”.
By this we infer was meant that the mackerel looked darker than sound mackerel should look, that it had an unusual look, that it looked had. The fact that food appears bad, as well as that it tastes bad, is some evidence that it is unwholesome. Schuler v. Union News Co., 295 Mass. 350, 351. Gracey v. Waldorf System, Inc., 251 Mass. 76, 78.
Standing by itself we might be inclined not to give much weight to this, but it is some evidence which the trial judge was entitled to consider in connection with the other evidence.
(b) Mackerel remaining in the can from which the plaintiff had eaten was declared, by an investigator of the Health Department of the City of New Bedford, “unfit for food”.
These words appear to constitute both a conclusion and an opinion. But the Report does not disclose that this testimony was objected to by the defendant. Moreover it may well be that the witness was an expert on this subject and so entitled to give his opinion. As an investigator of the Health Department, and in view of what happened in this case, it may have been one of his usual duties to inspect food to determine its wholesomeness or unwholesomeness.
The trial judge was entitled to consider this testimony.
(c) The plaintiff is not obliged to rely upon the fact that the fish appeared bad, nor that two days after it was eaten, fish from the same can kept in the ice chest, was pronounced “unfit for food”.
Three persons ate the fish and shortly after all became sick. None of the three ate any food after eating the fish and prior to becoming ill, and in a period of many hours be *38 fore becoming ill, the only article of food which all three had eaten was the mackerel. Johnson v. Kanavos, supra, at page 375. Moreover in the instant case one other person ate supper with the three who became ill. This person was Stella Brean. She clid not eat any of the fish and she did not become ill.
If one person eats a certain food and becomes ill and there is no evidence (other than the illness) that the food was unwholesome, it is not proper to draw the inference that the food was unwholesome and caused the illness. This is so because it may have been the physical condition of the person eating the food or the fact that he was allergic to that particular food, and not the unwholesomeness of the food, that caused the illness.
But when, under the same conditions, several persons who have eaten the same food, become similarly ill an inference may be warranted that the food which all had eaten was unwholesome and the cause of their illness. Johnson v. Kanavos, supra, at page 375.
While sick the plaintiff, and the other two who ate of the mackerel, had cramps, nausea and diarrhea. These are symptoms of illness caused by unwholesome food. See Schuler v. Union News Co., supra, 295 Mass. 350, 351.
The trial judge expressly found ‘ ‘ . . . the mackerel was unfit for food and the plaintiff ... ate it and became poisoned . . . ”.
This finding made on oral evidence is not subject to review since it cannot be said rig'htly that it was not warranted by any view of the evidence or was vitiated by error of law. Cohen v. Brockton Savings Bank, Mass. Adv. Sheets 1947, pp. 171, 174. Bresnick v. Heath, 292 Mass. 293, 296.
On the remaining question, namely the negligence of the defendant in processing and packing the fish, it may be help *39 fui to consider at the outset the art of preserving food as practiced in this case by the defendant.
Many foods adapted to human consumption, particularly the flesh of animals, fowls and fish, remain, under ordinary conditions, good and wholesome, for only a limited and comparatively short time. Thereafter they became bad and unwholesome. They decay, and when eaten by human beings, cause illness, often severe, and sometimes even death.
Decay of foods is caused by living microscopic organisms called bacteria.
Bacteria are found all about us, even in the air. When they come in contact with food, (here the fish) they multiply therein and after a time produce certain “products of decay, sometimes called toxins”, which, while themselves not living, are poisonous when eaten by human beings.
For centuries men have employed different methods or processes to make foods remain good and wholesome longer than they would under ordinary conditions.
Two of these processes are known as salting and smoking.
A third such process is often known as “canning” or “preserving”. This process is to some extent set forth in the evidence in this action. But in any event it is, and has for a long time been a matter of such common knowledge that judicial notice may be taken of it.
In brief this process is as follows:
The food, in this instance fish, is placed in containers made of a material impervious to air. Such as metal or glass. The containers are then sealed so that no air can thereafter enter. The fish in the containers is then subjected to heat to such a degree and for such a length of time that all bacteria therein are killed and cease to be living organisms. „ The toxins, or any products of decay, if any there be therein are also probably rendered innocuous by this heat.
*40 Thereafter the fish in the container will remain good as long as the container remains airtight.
We understand that, in general, fish processed and packed as above may be or become unwholesome for the following reasons:
(1) In the packing process heat was not applied to a sufficiently high degree, or for a long enough time, or both, with the result that the bacteria were not killed, but remained alive to multiply therein. It is under these conditions that snapper cans are produced. The multiplying bacteria produce g*oses which cannot escape from the airtight container and consequently force outward or bulge the ends of the can.
(2) After processing the container is, in some manner, so punctured or injured, that outside air, with its accompanying bacteria, enters and causes the process of decay to begin. The injury to the can which allows the bacteria laden air to enter may be a puncture or cut caused by a sharp object such as a nail, or the opening of the seams of the can produced by pressure or violence.
It is obvious that snapper cans cannot occur when fish , is spoiled in this manner. The aperture which allowed the bacteria laden air to enter the can will allow the gases caused by decay to escape.
Decay caused in the manner (2) above may be the result of the negligence of the packer or of some other person.
The packer may put cans of fish into boxes for shipment so negligently as to puncture one or more of the cans by a nail. On the other hand the cans may pass from the possession of the packer in perfect condition and be afterwards punctured, or forced open, by the carelessness of the shipper, wholesaler or retailer.
But it is equally obvious that if the decay caused in the manner set forth in (1) above, it will, in all probability, be caused only by the negligence of the packer.
*41 It therefore results that if the evidence shows that the can containing the fish eaten by the plaintiff was perfect and uninjured when opened by the can opener, then the decay must have been caused in the manner set forth in (1).
We believe that the evidence shows just this.
The can containing the fish eaten is in evidence, (Exhibit A) and was seen by us. It was cylindrical in shape. An examination of it shows that the bottom and sides are perfect. No punctures or apertures appear, no seams were opened. The top, which was opened by a can opener is also perfect so far as can now be seen. It is possible of course that when opened the top may have contained a puncture which might have been obliterated by the blade of the opener passing through it. This possibility, however, may have been overcome, or disposed of, by the testimony of the plaintiff and her husband, and her son Borneo. They all testified they noticed nothing unusual in the can. Borneo had an unusual opportunity to examine the top of the can. He opened the top with a can opener and when so doing must have looked directly at the top. If there was any puncture or aperture there, he would have seen it.
The trial judge also saw the can. He could have believed the testimony of Borneo and could have properly found that this can was perfect when opened.
The “snapper” can, (Exhibit B), would indicate that the defendant was guilty of some negligence in processing the pack of mackerel in December, 1944. Exhibit A was a part of this pack.
It may be argued that negligence in packing the can, (Exhibit B), does not show negligence in packing the can, (Exhibit A).
But it is not necessary to show any particular negligence. Washburn v. Owens Co., 252 Mass. 47, 54.
*42 It is enough if the trial judge found a greater likelihood that the bacteria or the poisonous results of decay, the toxins, found their way into the can of mackerel from which the plaintiff ate, through the want of care of the defendant or its servants, than through the act of a stranger, or other cause for which the defendant would not be responsible. Carter v. Yardley & Co. Ltd., 319 Mass. 92, 95.
In our opinion the trial judge could properly have so found.
Once it is established in the instant case that the can, (Exhibit A) containing the mackerel eaten by the plaintiff, was uninjured when opened, then the doctrine of “res ipso loquitur” applies.
This doctrine applies when the circumstances are such as to afford a reasonable inference that the result could not have occurred except for the negligence of the defendant. Walker v. Benz Kid Co., 279 Mass. 533, 538.
Assuming a duty of care, a finding of negligence in the packing and processing of the mackerel was proper if the trial judge found a greater likelihood that the harmful bacteria found their way into the can through w'ant of care of the defendant or its servants than through excusable accident or the act of a stranger, or some other cause for which the defendant would not be responsible. Carter v. Yardley Co., supra, at page 126.
The defendant’s third request, “on the evidence the doctrine of ‘res ipso loquitur’ is not applicable” was properly denied.
We find no error in the action of the trial judge on the defendant’s other requests for rulings.
No prejudicial error appearing the Order must be Report dismissed.