ANNA B. EARLE, administratrix, *vs.* NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY.

Norfolk.   January 20, 1920. — February 25, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Witness,* Expert. *Evidence,* Opinion: expert. *Practice, Civil,* Discretionary power
of trial judge as to expert testimony, Exceptions.

It is within the discretionary power of a trial judge to exclude a hypothetical
question asked of an expert witness if in the question facts are assumed which
are not yet in evidence.

An expert medical witness called by the plaintiff at the trial of an action of tort
was asked in cross-examination a hypothetical question, based upon an assump-
tion of facts of which no evidence yet had been introduced. The question was
excluded and the defendant excepted. In redirect and in recross-examination
there was extensive inquiry on the same subject matter and the defendant was
permitted to ask questions which in substance sought the same information as
that which previously had been excluded in cross-examination. *Held,* that the
exceptions must be overruled, both because it was a proper exercise of discretion
to exclude hypothetical questions based on facts of which there was not as yet
any evidence, and because, owing to the redirect and recross-examination, the
defendant was not harmed by the exclusion.

TORT by Benjamin M. Earle for personal injuries, received on
July 6, 1909, while a passenger upon a railroad train of the de-
fendant and alleged to have been caused by negligence of the
defendant. Writ dated February 2, 1910.

In February, 1915, the plaintiff died and his widow, Anna B.
Earle, was appointed administratrix and was admitted as plain-
tiff to prosecute this action.

The action was tried before *McLaughlin,* J. There was evidence
of negligence of the defendant.

Edward T. Taylor, a medical expert called by the plaintiff,
testified that in his opinion the plaintiff's intestate had suffered
from "hysterical blindness," of which the accident described in
the plaintiff's evidence was an adequate cause; and that the eyes
of a patient suffering from hysterical blindness might see objects
to which they were directed, although, through a failure of some
part of the brain to register that fact, the patient would not be-
lieve that he was seeing the object.

In cross-examination Dr. Taylor testified that he had examined the plaintiff's intestate three times. His report of the second examination, held on March 15, 1910, contained the following: "He has been South several times and has done a good deal of hunting and killed a number of birds. He says he shot by sound. 'I couldn't see a bird to save my life,' but admits that on one occasion he saw the 'flash' of a falling goose, although he was unable to see the geese in general." The witness was asked, "At that time it was not possible for you to believe, Doctor, that he didn't see more than he admitted, was it — in regard to this shooting episode?" and answered, "I felt that he did see at times — I want to be just in the situation — at times it seemed to me that he probably saw somewhat more than he admitted." He then was asked, "Well, do you remember whether you accepted his statement that he could shoot geese by sound?" and answered, "Well, I had it down there as you see, in his own language, and in my own opinion, as I say, I am not a hunter, — but I should think he must have been a pretty good shot to do it." There then followed the questions, quoted in the opinion, which were excluded.

In redirect-examination, the witness was asked, "Now your attention has been directed to your reports, and to exaggeration. Isn't that something that you frequently find in hysterical patients, a tendency to exaggerate?" and answered, "Yes, I think that is very characteristic of the hysterical type of person — a tendency to make a good deal of small things;" and further testified that at times a patient subject to hysterical blindness would have days when they could see normally and then from one cause or another at a succeeding time they would find themselves in a condition where they could not see. He also was asked, "Would the fact of seeing a man on one or two occasions shoot at birds and kill them affect your judgment that the man had hysterical blindness?" and answered, "It would not. It would simply indicate that at that time he was not hysterically blind — at the time of that particular shooting."

In recross-examination occurred the following questions and answers: "Q. Now I understand from what . . . [the plaintiff's counsel] said that if a man jumped a ditch, climbed a fence, shot birds, that would not be inconsistent with the desire on his part to get well, and you assented that it would not be inconsistent,

didn't you?  A. Why, I think so, if I understand you and . . .
[the plaintiff's counsel].  I think I did understand.  I think that
is a perfectly natural thing for a man to do if he could. — Q. Would
that be consistent with blindness?  With hysterical blindness?
A. Not while he was doing it, surely not. — Q. No.  Exactly.
Is it your notion, Dr. Taylor, that Mr. Earle could sight and see
to shoot a duck one minute, in that early visit south in October
of 1909, and a second afterwards he could be hysterically blind?
A. That is a possibility. — Q. Is it your belief that that was the
thing in this case? . . . A. I can't say as to any individual in-
cident in the case, but the characteristic is a sudden loss and res-
toration of blindness.  There is no question about that at all.  It
is a characteristic feature of this type of nervous disturbance."
There then followed, in further recross-examination which filled
three pages of the printed record, questions and answers on the
same general subject.

The bill of exceptions states, "Dr. Taylor's testimony was
introduced before the defendant offered any evidence.  The
defendant introduced competent medical testimony tending to
show that Earle was not suffering from hysterical blindness and
that his claims were not genuine.  Testimony was admitted from
various witnesses from South Carolina, called by the defendant,
that Earle while in South Carolina in 1909 and 1910 frequently
shaved himself when no one was present; that he frequently read
newspapers and wrote letters; shot quail and duck many times;
that he jumped across drains while walking; that he made his way
alone through the forests; that on occasions, when strangers were
present or approached, he would act in a way that indicated he
was blind or could not see; that while in the South in 1909 and
1910 he told various people that he could not see; that he made
his way over railroad tracks and to the railroad station in the dark;
that he jumped from a boat to land; that he waded in streams,
poling logs; that during the same period he drove a horse on an
uneven road and that he harnessed the horse alone; that during
the same period when no one was in the room with him he sat
before a mirror and adjusted his wig on numerous occasions; that
when he shot at duck and quail he took aim and the result of his
shooting was that the birds fell to the ground and that he picked
them up."

There was a verdict for the plaintiff in the sum of $8,000; and the defendant alleged exceptions.

*J. L. Hall,* for the defendant.

*J. W. McAnarney,* (*R. H. Oveson* with him,) for the plaintiff.

CARROLL, J.  The intestate, Benjamin M. Earle, was injured while a passenger on one of the defendant's trains in the South Terminal Station, Boston.  There was evidence of the defendant's negligence and a verdict was returned for the plaintiff.  The exceptions relate to the exclusion of certain questions put to the plaintiff's medical expert by the defendant, — it being the contention of the plaintiff that her intestate suffered from a disease known as hysterical blindness, caused by the injuries received; and of the defendant, that he did not suffer from blindness and that his claims were not genuine.

Dr. Edward T. Taylor, in direct examination, testified that he examined the intestate on several occasions, and that the accident was, in his opinion, sufficient cause for the visual disturbance complained of.  On cross-examination he was asked: "Supposing, Doctor, he had gone down to some place in North Carolina, and told them he could not see; that he was blind, and that as a matter of fact they saw that he was shaving himself when no one was — when he thought no one was around, or reading, his newspaper, writing letters, or shooting birds, or jumping across drains, making his way through forests, — wouldn't the hysterical element in that — wouldn't your belief in the hysterical element in his case be somewhat shaken?"  This question was excluded, and the defendant excepted.  He was then asked, "Assuming, Doctor, that you knew that he had deliberately misrepresented his condition of blindness, or failure to see, with a purpose, would that affect your opinion in the case as to the existence of hysteria?"  This also was excluded, subject to the defendant's exception.  The witness was then further cross-examined: "Well, Doctor, if you knew, as a matter of fact, that the man at that time was able to take aim at ducks or quail, and bring them down, after shooting them, would not that affect your belief in the existence of hysteria?"  To the exclusion of this question the defendant also excepted.

On redirect-examination Dr. Taylor testified that with hysterical patients there is an inclination to exaggerate and a patient

suffering from this disease could at times see as a normal person could. On recross-examination the doctor's attention was directed to the various acts testified to by the witnesses, and when asked if these things would be consistent with hysterical blindness, answered that they would not while he was performing these acts; and that it was possible the intestate "doesn't see a duck, and then in a second does see a duck," and that a sudden loss or restriction of sight was a characteristic feature of this disease. On recross-examination he was further asked: "Supposing those are the facts in the case, . . . do you also subscribe yourself as believing that he [Earle] had hysterical blindness at that time?" And his answer was in the affirmative.

When the testimony was excluded upon cross-examination, the hypothetical question assumed facts which were not then in evidence; and the discretion of the judge in refusing to allow the questions at that time is not subject to exception, unless it appears that the discretion was wrongly exercised. *Anderson* v. *Albertstamm,* 176 Mass. 87. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527. The defendant was given an opportunity upon recross-examination to inquire fully concerning the nature and extent of the intestate's claim. It was not prevented from making any material inquiry, and even if there were error in excluding the questions, this error was cured by their subsequent admission. *Chalmers* v. *Whitmore Manuf. Co.* 164 Mass. 532. *Providence & Worcester Railroad* v. *Worcester,* 155 Mass. 35.

The defendant's contention is that it was not permitted to ask whether or not in the opinion of the witness Earle was hysterically blind. In recross-examination the defendant was given the opportunity fully to examine him, and in fact availed itself of this opportunity. It was allowed to present completely its case and to examine fully the medical expert, and was not deprived of any of its rights in the conduct of the trial.

*Exceptions overruled.*