LOUIS MILLER *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.     December 5, 6, 1921. — March 1, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Evidence,* Opinion: expert; Competency.     *Practice, Civil,* Exceptions.

Where, at the trial of an action for personal injuries, the plaintiff sought to prove that certain conduct on his part, material to the issues being tried, was due to a condition following concussion of the brain resulting from a blow on the head caused by a fall upon a railroad track and, while there was evidence of the fall and of the blow on the head and that thereafter he remembered nothing although he got up, changed a bundle from one hand to the other and walked off, there was no evidence that he suffered concussion of the brain, it is proper to exclude a hypothetical question asked by his counsel of a medical expert which calls for an answer to the effect that there was a concussion of the brain.

*It seems* that, at the trial above described, it would have been proper to have permitted the medical expert to be asked a hypothetical question whether, assuming the existence of the facts in evidence, such facts in his opinion would have been sufficient from a medical point of view to cause a concussion of the brain.

At a trial of an action at tort, where the plaintiff sought to establish that certain material conduct of his occurred while he was in an unconscious or semi-unconscious condition following a fall in which he struck his head on a railroad track, there was evidence warranting a finding that he suffered the blow in the circumstances described and thereafter lost his "mind altogether, — everything," and a medical expert was permitted to state that in his opinion the plaintiff's "unconsciousness was the result of his fall," that the blow to which he testified might cause him to be dazed, so as "not to be conscious of his surroundings," and that in that condition of loss of memory he could arise

and carry his bundles. The expert also was permitted to testify at length as to the nature of a concussion of the brain. Certain further hypothetical questions of the medical expert, which related to whether the plaintiff's condition was due to a concussion of the brain, were excluded subject to exceptions by the plaintiff. *Held,* that

(1) The probability of the plaintiff's story could not be materially increased by designating the mental condition from which he suffered as one of concussion of the brain rather than of dizziness, loss of memory, or unconsciousness;

(2) The plaintiff was not harmed by the exclusion of the questions;

(3) The exceptions must be overruled.

TORT for personal injuries alleged to have been received when the plaintiff, as he was leaving a train at the North Station in Boston, was run over by a train backing in on an adjoining track. Writ dated December 7, 1917.

In the Superior Court, the action was tried before *Fessenden,* J. Material evidence and exceptions saved by the plaintiff are described in the opinion. The jury found for the defendant; and the plaintiff alleged exceptions.

*J. H. Vahey,* (*P. Mansfield* with him,) for the plaintiff.

*A. W. Rockwood,* for the defendant.

DE COURCY, J. This action was brought to recover for personal injuries received by the plaintiff on August 29, 1917, while he was in the North Station in Boston. The jury returned a verdict for the defendant. The case is before this court on the plaintiff's exceptions to the exclusion of certain questions put to his medical expert, Dr. Howard A. Lothrop.

In order to consider the questions of law raised it is necessary to state briefly the material facts, as they could have been found by the jury on the evidence before them at the time when the expert was called. Miller boarded the 6:05 train (which was train No. 60), at Ayer, entered the fourth car from the engine, and remained standing near the rear door, because of the crowded condition of the car and platform. The train came into the North Station on track No. 11, and stopped with its engine about two and a half car lengths from the bunter; the intervening space being partly occupied by two empty passenger cars. The tracks in the station are straight, and run approximately north and south. Those numbered 11 and 12 are 7.3 feet apart; and there is a platform to the east of track 11 (separating it from No. 10), and another platform to the west of track 12 (separating it from

No. 13). As soon as the train stopped the outgoing passengers began to push one another; the gates on both sides of the platform were open, and the plaintiff was pushed and fell down on the wrong (or track) side. He received a cut on the left side of his face; got up on his knees, and shifted his bag from the left hand to the right. He then put his left hand up to his face, saw the blood, and (in his own words) "I lost my memory; I lost my mind altogether." The next thing he remembered, which was on the following morning, he was in the hospital.

The testimony of other witnesses called by the plaintiff tended to show that when train No. 60 came to a stop on track 11, a switching engine was backing in a freight or express car on track 12; that a man resembling the plaintiff crossed in front of the engine on track 11 and "walked straight over in front of this car," that was being moved on track 12. A night clerk at the hospital testified that the plaintiff told him he had not fallen off the car, but had got off, and "was crossing this track and was struck by this engine." The plaintiff was found lying seemingly in the place where he had been run over.

The claim of the plaintiff was that he was thrown to the ground from the rear platform of the fourth car, and received a blow upon the head; that as a result thereof he wandered in an unconscious and dazed condition a distance of several hundred feet, and in some manner stepped in front of the train that ran over him. The only testimony as to his movements after he left his car was that above referred to, as to his crossing track 11 in front of the engine; and there was testimony that no one was seen walking along the space between tracks 11 and 12. Many hypothetical questions were asked his expert witness, Dr. Lothrop. Those only have been argued which relate to whether the plaintiff suffered a concussion of the brain. Some of these were properly excluded because they called for an answer to the effect that there was a concussion of the brain. There was no evidence in the case that the plaintiff in fact had suffered such an injury. As was said in *McCarthy* v. *Boston Duck Co.* 165 Mass. 165, 166: "It is important that the form of the question should be such as not to require or permit the witness to draw conclusions of fact from the evidence in the case, and to give an opinion based wholly or in part upon such conclusions." In *Sullivan* v. *Boston Elevated*

*Railway*, 185 Mass. 602, cited by the plaintiff, the fact that the plaintiff suffered attacks of appendicitis was established, and the doctor's opinion was asked to ascertain its cause. There was no error in excluding those questions which assumed the existence of a fact not in evidence, — namely, that the plaintiff had suffered a concussion of the brain. *Earle* v. *New York Central & Hudson River Railroad*, 235 Mass. 61.

The expert could rightly have been asked, by a hypothetical question in proper form, whether facts such as the plaintiff testified to about his fall and injury would be sufficient from a medical point of view to cause a concussion of the brain. *Benjamin* v. *Holyoke Street Railway*, 160 Mass. 3. One at least of the hypothetical questions might well have been allowed, in the discretion of the trial judge, as being substantially of that purport. But the practical answer to the plaintiff's exceptions is, that his substantial rights were not injuriously affected by the exclusion of this and the other questions. As already stated the plaintiff's claim was that as the result of the blow received on the head, he wandered in an unconscious and dazed condition, and did not know what happened to him. The jury had his testimony as to his loss of memory, loss of "mind altogether, — everything." They also had the testimony of Dr. Lothrop, that in his opinion the plaintiff's "unconsciousness was the result of his fall;" that the blow to which he testified might cause him to be dazed, so as "not to be conscious of his surroundings," and that in that condition of loss of memory he could arise and carry his bundles. The doctor was permitted to testify at length as to the nature and effect of concussion of the brain. It is difficult to see how the excluded testimony could have added anything to the evidence in the case, on the issue of liability. The probability of his story could not be materially increased by designating the mental condition from which he suffered as one of concussion of the brain rather than of dizziness, loss of memory, or unconsciousness. An examination of the exceptions in detail fails to disclose any reversible error. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 383.

*Exceptions overruled.*