ESTHER FLYNN *vs.* GROWERS OUTLET, INC.
(and two companion cases [1]).

Hampden.     September 19, 1940. — November 25, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Sale of food, Violation of law.  *Food.  Witness,* Expert.
*Evidence,* Opinion: expert; Presumptions and burden of proof.  *Practice, Civil,* Appellate Division: appeal.  *Error,* Whether harmful.
*Proximate Cause.*

A finding, that a graduate veterinarian, who for five years had been meat
inspector for a city, was qualified to testify as an expert that sausage
meat described to him showed contamination or a preliminary state of
putrefaction, was warranted, and such testimony properly was admitted in evidence as an opinion on a matter not within common
knowledge.

At the trial of an action of tort for negligence in selling contaminated
sausage meat packed in a transparent glass jar, an error in permitting
an expert to testify, when there was no evidence to show what the
"normal" color of sausage was, that contamination was indicated if a
portion of fresh sausage meat was of "normal" color in the center
and dark grey in the outer edges, was not prejudicial to the defendant,
there being testimony that the actual color of the meat as shown by
the evidence indicated contamination.

Upon the evidence, a finding that a plaintiff's illness was caused by eating
contaminated sausage meat purchased from the defendant was warranted although there was no medical testimony and there was evidence
that the plaintiff had eaten other food shortly before his eating the
sausage meat.

Evidence, at the trial of an action for negligence in selling contaminated
sausage meat, not manufactured by the defendant but sold by him
in a transparent glass jar covered with cellophane sealed on the sides,
warranted a finding of negligence of the defendant in violating G. L.
(Ter. Ed.) c. 94, § 150.

THREE ACTIONS OF CONTRACT OR TORT.  Writs in the
District Court of Holyoke dated December 14, 1939.

A report by *Welcker,* J., after findings for the plaintiffs
in the sums of $125, $125, and $100, respectively, was

[1] The companion cases are by Dawn Flynn and John Flynn, respectively,
against the same defendant.

ordered dismissed by the Appellate Division for the Western District.   The defendant appealed.

The cases were submitted on briefs.

*J. Swirsky,* for the defendant.

*O. Lamontagne,* for the plaintiffs.

Cox, J.   The plaintiffs seek to recover for the effects of illnesses alleged to have been caused by eating pork sausage that was purchased from the defendant.   The actions have been treated by the parties as based on negligence.

There was evidence that the sausage meat, packed in a glass receptacle, was purchased between ten and ten-thirty o'clock in the forenoon of Tuesday, November 14, 1939, by the plaintiff Esther Flynn, who is the wife of the plaintiff John.   Dawn, aged six years, is their daughter.   The receptacle was of transparent white glass, covered at the top by cellophane that was sealed on the sides.   The meat was not prepared or packed by the defendant.   At noon on the same day, a portion of the meat was cooked and eaten by the mother and her daughter.   When Mrs. Flynn took the portion of meat from the receptacle, she noticed that the part next to the glass was of a "greyish" color, that the center was "pinkish," and that the part near the sides and extending up from the bottom one half way was of a "greyish" color as dark as her glove.   She did not notice any odor and at no time did she know from the color that the meat might be unwholesome.   In addition to the sausage meat, both mother and daughter ate potatoes, vegetables, bread and butter, and the daughter drank chocolate.   Mrs. Flynn did not remember the kind of dessert that she had.   When the daughter returned from school that afternoon about four o'clock, she complained of pains in her stomach and was ill.   Her vomiting, which commenced late in the afternoon, continued on the two following days.   On the morning of the fourteenth the daughter had orange juice, chocolate, scrambled eggs and cereal for her breakfast, and her mother had coffee.   That evening more of the meat was cooked, and the husband ate some of it at six o'clock, together with potatoes, vegetables, bread and butter and some kind of a dessert.   At

the same meal, Mrs. Flynn ate a chicken sandwich made from chicken that she had cooked on Sunday morning, the twelfth, for the family dinner on that day. The remainder of the chicken had been kept in the refrigerator. No odor was noticed from any of the food that was eaten on the evening of the fourteenth. It did not appear what the husband ate at any time on Tuesday prior to his evening meal. During the night Mrs. Flynn awoke with pains in her stomach and was ill. She continued to vomit on the fifteenth and the sixteenth. Her husband became ill on the fifteenth and vomited during the night. None of the plaintiffs had any medical attendance. .

There was evidence that meat in a container that was "pinkish" at the center and of a dark "greyish" color at the outer edges showed a contamination or a preliminary stage of putrefaction, and that the color alone would be sufficient ground for this conclusion. The trial judge, who found for the plaintiffs, also found that the glass receptacle with its cellophane covering did not constitute an air sealed container; that the cause of the illness of each plaintiff was the unwholesome condition of the sausage meat; that the defendant should have seen the condition of the sausage meat at the time of the sale; and that its failure to do so was negligence.

The Appellate Division for the Western District ordered the report of the trial judge dismissed.

The evidence that the sausage meat showed contamination or a preliminary state of putrefaction came from a graduate veterinarian of Cornell University, who for five years was a meat inspector for the city of Holyoke. His duties did not include an inspection of meats in prepared form or those packed in containers or receptacles such as was used in the case at bar. The defendant objected to this testimony on the ground that the witness was not qualified to give it. The qualifications of an expert are commonly for the decision of the trial judge as a question of fact, and we cannot say, as matter of law, that he was in error in receiving the evidence. *Goodyear Park Co.* v. *Holyoke*, 298 Mass. 510, 512, and cases cited. The defendant

further contends that the subject matter of the testimony did not call for an expert opinion, but, on the contrary, that it was a matter of common knowledge. It is true that there is no room for the opinion of an expert if the subject of his testimony is of such a nature that it may be presumed to be within the common experience of men. But, if this is not the situation, the testimony of a qualified expert is admissible for such help as it may, if believed, give to the trier of facts. *Jackson* v. *Anthony*, 282 Mass. 540, 544. In the circumstances it cannot be said that the evidence was not received rightly.

This same witness was asked what is indicated if a portion of fresh sausage meat is of "normal" color in the center and dark grey in the outer edges, and was allowed to reply, in substance, under the objection of the defendant, that this indicated contamination or a preliminary state of putrefaction. On this record this evidence should not have been admitted. It does not appear that there was any evidence to show what the normal color of sausage is. *Miller* v. *Boston & Maine Railroad*, 240 Mass. 461, 463, 464. But we are of opinion that this error did not injuriously affect the substantial rights of the defendant. G. L. (Ter. Ed.) c. 231, § 132. There was evidence, already narrated, that the color of the meat in question showed contamination. See *Miller* v. *Boston & Maine Railroad*, 240 Mass. 461, 464.

The trial judge declined to rule, in substance, that the evidence did not show beyond surmise or conjecture that the plaintiffs' illnesses were caused by the sausage meat, that the finding that it was unwholesome and the cause of the illnesses was unwarranted as matter of law, and that the evidence and findings were insufficient as matter of law to warrant a finding of negligence on the part of the defendant.

As a part of their cases, the plaintiffs were bound to show that unwholesome food sold by the defendant was the probable cause of their illnesses, but they were not obliged to exclude every other possible cause. *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, 550, and cases cited. *Johnson* v. *Kanavos*, 296 Mass. 373, 376. It is true

that there was no medical testimony that the illnesses were caused by eating the sausage meat, but the absence of such testimony, in and of itself, would not prevent findings for the plaintiffs. *Johnson* v. *Kanavos*, 296 Mass. 373, 376. The cases at bar differ on the facts from some that have been before this court, examples of which are collected in *Mellace* v. *John P. Squire Co.* 306 Mass. 515, 516. In the cases at bar there was no peculiar taste or odor. Here all of the plaintiffs were bound by their testimony that they had eaten the other articles of food hereinbefore referred to. But there was evidence of the appearance of the sausage meat from which it could have been found, as it was, that it was unwholesome. See *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108. Compare *Gracey* v. *Waldorf System, Inc.* 251 Mass. 76, 78; *Cleary* v. *First National Stores Inc.* 291 Mass. 172, 175. It cannot be said that the inference was not warranted that the sausage meat was in the same condition as to appearance when it was first prepared for cooking as it was two hours before when it was purchased. *Commonwealth* v. *Arone*, 265 Mass. 128, 130. *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108. See *Beacon Trust Co.* v. *Wright*, 288 Mass. 1, 5. It is true that there was no marked abstinence, as in some cases, from eating prior to the times when the sausage meat was eaten (see *Mellace* v. *John P. Squire Co.* 306 Mass. 515, 516), and in the case of the husband there is no evidence of what he ate at the two meals before he ate the sausage meat. (See *Miller* v. *W. T. Grant Co.* 302 Mass. 429, 431.) Nevertheless, we are of opinion that the evidence narrated was of such a character that it cannot quite be said that the finding that the cause of the plaintiffs' illnesses was the unwholesome sausage meat was based on mere surmise or conjecture, or that the judge's findings were unwarranted as matter of law. The plaintiffs were not bound to exclude every possible cause for their illnesses except that of the negligence of the defendant. They were required to show by evidence only a greater likelihood that their illnesses came from an act of negligence for which the defendant is responsible than from a cause for which it is not. *Rocha* v. *Alber*, 302 Mass. 155, 157.

G. L. (Ter. Ed.) c. 94, § 150, provides, among other things, that whoever sells any tainted, diseased, corrupt, decayed or unwholesome meat or provisions of any kind "except when packed in such a container that upon reasonable inspection the condition of the contents thereof cannot be ascertained," without making the condition of the thing sold fully known to the buyer, shall be punished. It could have been found that this statute was violated by the defendant, and if it was, this is some evidence of negligence. *Schuler* v. *Union News Co.* 295 Mass. 350, 354, 355. See *Holt* v. *Mann,* 294 Mass. 21, 24. The cases at bar in this respect are distinguishable from *Mellace* v. *John P. Squire Co.* 306 Mass. 515, 517. Here it could have been found that the defendant did not make known the condition of the sausage meat to the plaintiff who purchased it.

*Order dismissing report affirmed.*