JEANNETTE E. D'ENTREMONT *vs.* BOSTON CONSOLIDATED
GAS COMPANY.

Suffolk.   November 8, 1946. — January 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Negligence*, Gas, Contributory.   *Proximate Cause.*   *Evidence*, Opinion:
expert.

A finding of negligence of a gas company toward a plaintiff was war-
ranted, and a ruling that the plaintiff was guilty of contributory neg-
ligence was not required, by evidence that about a month after first
smelling gas in her kitchen the plaintiff complained to the gas com-
pany but that no leak was found upon an inspection of the kitchen
by the company's employees, and that in a second inspection by
them, made upon a further complaint by the plaintiff over a month
later, gas was found to be leaking from a loose outlet of a meter located
in the basement and under the company's control.
Testimony, that a pregnant woman suffered from nausea and dizziness
during a period of nearly three months while there was a strong odor
of gas in her apartment due to a leak from an outlet of a gas meter,
but that her illness disappeared upon the leak being stopped and "the
gas cleared up" two months before her child was born, warranted,
without medical evidence, a finding that her illness was caused by
inhalation of gas rather than by pregnancy.

TORT.   Writ in the Superior Court dated April 16, 1943.
The action was tried before *Dillon*, J.

*J. M. Poster*, for the plaintiff.

*R. W. Cornell*, for the defendant.

SPALDING, J.   The plaintiff seeks compensation in this
action of tort for an illness alleged to have been suffered
by her by reason of the defendant's negligence in permitting
illuminating gas to escape from a defective meter under its
control.   The question for decision is whether the judge
erred in directing a verdict for the defendant.

The jury could have found these facts: The plaintiff and
her husband in the early part of September, 1942, became
the occupants of a two-story apartment at 18 Sachem Street
in Wollaston.   The kitchen, which was on the first floor,
was directly over a furnace room in the basement in which

the defendant's gas meter was located. The boards on the kitchen floor were old and had separated so that it was possible to see light in the furnace room when it was lighted.

About three weeks after moving in, when the weather necessitated the closing of the windows, the plaintiff began to smell gas, and this odor became "more and more prominent." As a result of this the plaintiff and her husband were obliged to eat their meals near an open window, after which they would retire to the second floor which was the only place in the house where the odor of gas did not reach. In the early part of November the plaintiff went to the Quincy office of the defendant and made a complaint. Shortly thereafter two employees of the defendant came to the home of the plaintiff who "told them about the gas," and they "made an inspection of the kitchen which included the gas refrigerator, the gas water heater and the stove"; they then left, stating that they did not smell any gas or find any leaks. After this visit the plaintiff called the defendant's complaint department and lodged a complaint with one of its employees. A few days later (shortly after Christmas), two employees of the defendant came to the plaintiff's apartment to inspect the premises. Finding nothing wrong in the kitchen, they went to the cellar, where they found gas leaking from a loose outlet nut on the meter and tightened it. The meter was installed by the defendant in January, 1940. From some time in October the plaintiff had suffered from nausea and dizziness whenever she remained downstairs, but this condition disappeared after the leak was repaired and "the gas cleared up."

The direction of a verdict for the defendant was error.

We think that the foregoing facts warranted a finding that illuminating gas entered the plaintiff's apartment by reason of a defective connection in a meter under the defendant's control which in the exercise of reasonable care and diligence it might have remedied before it did. *Hunt* v. *Lowell Gas Light Co.* 3 Allen, 418, 419. *Ferguson* v. *Boston Gas Light Co.* 170 Mass. 182. *Soulier* v. *Fall River Gas Works Co.* 224 Mass. 53. *Powers* v. *Wakefield*, 231 Mass. 565. *Barbeau* v. *Buzzards Bay Gas Co.* 308 Mass.

245, 247–248.   The plaintiff, after discovering the presence of gas in her apartment, could not sit by doing nothing and then hold the defendant responsible for the consequences of a condition of which it had no knowledge.   *Hunt* v. *Lowell Gas Light Co.* 1 Allen, 343, 348–350.   But it could not be ruled as matter of law that the plaintiff was guilty of contributory negligence.   Whether she acted with reasonable diligence in bringing the matter to the attention of the defendant and took proper precautions for her own safety were questions of fact for the jury.

It appears that throughout the period during which the plaintiff suffered from dizziness and nausea she was several months advanced in a pregnancy that resulted in the birth of a child in February, 1943.   There was no medical evidence connecting the symptoms described by the plaintiff with the inhalation of illuminating gas.   The defendant argues that in these circumstances a jury could not properly determine that there was sufficient causal connection between the plaintiff's illness and the alleged injury, and that her illness might just as well have been caused by the pregnancy.   No doubt there are ailments so obscure in their nature that a jury unaided by expert testimony would not be permitted to determine whether they were causally related to an injury.   See *Toy* v. *Mackintosh*, 222 Mass. 430. But the present case is not of this class.   We think that the effects of the inhalation of illuminating gas on the human system are sufficiently within the realm of common knowledge and experience that a jury could say whether the illness described by the plaintiff was caused by it.   See *Johnson* v. *Kanavos*, 296 Mass. 373, 376; *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373.   We are of opinion that this is not a case where the cause of the plaintiff's illness must be said to be conjectural, as in *Gracey* v. *Waldorf System, Inc.* 251 Mass. 76, and *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, relied on by the defendant.   In view of the plaintiff's testimony that her illness commenced in October after she noticed the odor of gas and that she got better after the leak was repaired and "the gas cleared up," it could have been found that there was a greater likelihood

that her illness was attributable to the gas than to her pregnancy. She was not obliged to exclude every other possible cause. *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373, 376.

*Exceptions sustained.*