ALBERT WATSON's (dependent's) CASE.

Suffolk. March 1, 1948. — April 5, 1948.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Proximate Cause. Workmen's Compensation Act,* Injuries to which act applies; Attorney's fees; Procedure: notice, filing of claim, appeal, expenses of certification or appeal.

Evidence warranted a finding by the Industrial Accident Board in a workmen's compensation case that a paint remover used by a painter in removing paint from his hands and arms in the course of his work contained benzol and that there was a causal connection between his employment and his death from benzol poisoning, although no analysis of the paint remover was in evidence.

Want of seasonable notice of injury and failure to file a claim until long after the time prescribed by statute did not preclude an award of compensation in a workmen's compensation case where it was not contended that the employee did not receive proper medical care or that the delay caused the insurer loss of evidence, and a finding by the Industrial Accident Board that the insurer was not prejudiced by the delay was supported by the evidence.

On appeal from a decree of the Superior Court for the payment of compensation in a workmen's compensation case, an amount awarded in the decree under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, for legal services and expenses in connection with the certification to that court could not be pronounced excessive in the absence from the record of the evidence before that court and of any findings by the trial judge on the subject; a percentage of the compensation awarded should not be considered.

Upon appeal from a decree of the Superior Court awarding compensation in a workmen's compensation case, this court, in affirming the decree, ordered that an allowance for legal services and expenses in connection with the appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, should be settled by a separate order of a single justice of this court upon presentation of an itemized list of the expenses.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The insurer appealed from a decree entered by order of *Swift*, J.

*E. Z. Dymsza*, for the insurer.

*S. B. Horovitz*, (*L. S. Locke* with him,) for the claimant.

RONAN, J. The employee, after working for more than twenty years as a truck driver for the insured, a lumber dealer, although for the last five years one fourth of his time was spent in repairing and painting property owned by the employer, became ill and was compelled to quit his employment in November, 1942. After painting he would wash the paint from his hands and forearms with a paint remover or thinner. He was confined to a Boston hospital for a little more than a week in March, 1943, and for three days in June, 1943. He died in a Needham hospital in July, 1943. The insurer has appealed from a decree of the Superior Court awarding compensation, costs, and counsel fees and expenses amounting to $750.

The cause of death, as stated in the record of the Needham hospital and concurred in by all the medical testimony, was aplastic anemia due to benzol poisoning. The finding of the board to this effect is amply supported by the evidence and cannot be reversed. *Flaherty's Case*, 316 Mass. 719, 722. *Chapman's Case*, 321 Mass. 705, 707. The insurer contends that, as no analysis was made of the preparation which the employee used to remove paint from his hands and arms and there being no evidence as to the composition of this preparation or any proof that it contained benzol, a causal connection between the employment and the death of the employee has not been shown.

The evidence, none of which was objected to, would warrant the following findings of facts. The physician at the Boston hospital who treated the employee was chief of the blood clinic and apparently was thoroughly familiar with benzol poisoning cases. By a series of tests he eliminated the causes for the poisoning with which the employee was afflicted excepting that it was of chemical origin. He

learned that the employee had washed his hands and arms with a preparation which had a certain trade name and which was not turpentine. It was much cheaper than turpentine. It therefore contained benzol. This physician did not know the exact composition of the article mentioned by the employee; but he had given considerable study to paint thinners and to the paint industry in general, and he knew that any substitute for turpentine, which is an expensive paint thinner, was a mineral spirit consisting essentially of naphtha containing ten per cent of benzol. Such a thinner is an effective solvent in paint and is widely used, and from his knowledge of paint thinners it was not necessary for him to analyze the thinner in order to state its contents.

This hospital physician, whose qualifications as an expert were not questioned, and the family physician both expressed the opinion that the benzol poisoning came from the thinner which the employee had used in his work. These opinions do not rest upon conjecture or surmise.

At one time, while the claimant waited to drive the employee home after he finished washing his hands and arms, she asked him whether what he was using was a fuel oil and he replied that it was not but that it was a paint remover and a paint thinner. She had seen him use this paint remover or thinner a good many times. His two daughters testified that he told them that he used a paint remover or thinner to remove paint from his hands.

When once it was established, as it was here, that the employee was suffering from benzol poisoning, it necessarily followed that he must have come in contact with benzol. Whatever painting he did before he quit his employment was done for the insured, and it could be found that he did none afterwards. There was no place outside of his employment where he would or did come in contact with benzol. On the other hand, he could have been found to have used a paint thinner as a substitute for turpentine, and this thinner in common with all such substitutes had a naphtha base containing ten per cent of benzol. The particular disease which afflicted the employee could only be attributable to a particular kind of irritant. The nature and contents

of an article are not required to be proved by an analysis where the results which its use produces sufficiently disclose its qualities and composition. *Barringer* v. *Ocean Steamship Co. of Savannah*, 240 Mass. 405, 408. *Johnson* v. *Kanavos*, 296 Mass. 373, 376. *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373, 376. *Botti* v. *Venice Grocery Co.* 309 Mass. 450, 452. *Kurriss* v. *Conrad & Co. Inc.* 312 Mass. 670, 674. See 130 A. L. R. 616. The source of the infection was benzol. The inference was warranted that the infection came from the benzol contained in the paint thinner. The claimant had the burden of tracing the death to the benzol used by the employee in his work, but she sustained that burden by showing that there was no place outside of his employment where he would or did come in contact with benzol. *Rocha* v. *Alber*, 302 Mass. 155, 157. *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373, 376. *D'Entremont* v. *Boston Consolidated Gas Co.* 320 Mass. 582, 584–585. The testimony referred indiscriminately to the substance which the employee used as a paint remover or paint thinner. The board adopted the former term in dealing with this substance. It is plain from what has been said that the finding of the board that the employee's death was due to benzol poisoning which came from contact with materials used by the employee in his work, notably from paint remover, cannot be said to have been unwarranted by the evidence.

The case is distinguishable from *Doherty's Case*, 222 Mass. 98, where a linotype operator who claimed to be suffering from lead poisoning failed to show the composition of the type upon which he worked, and from *Breault's Case,* 270 Mass. 256, where an employee who for years had been suffering from lead poisoning was properly found by the board to have been so suffering but there was no evidence warranting a finding that during the eight weeks he was employed by the insured he was exposed to lead.

The claim was not filed until March 30, 1945. An award is not barred by want of notice of injury or the failure to file a claim within the time prescribed by statute where the claimant shows that the insurer was not prejudiced by the delay. G. L. (Ter. Ed.) c. 152, §§ 41, 44, 49. There is no

contention in the present case that the employee did not receive proper medical care. The only witness for the insurer testified that turpentine alone was used for a paint thinner and that the employer never used any such thinner as described by the employee. There is not the slightest intimation that the delay caused the insurer any loss of evidence which it otherwise could have secured. The finding of the board that the insurer was not prejudiced by the delay is not lacking in evidential support. *Zabec's Case*, 302 Mass. 465. *Duggan's Case*, 315 Mass. 355, 359. *Perrotta's Case*, 318 Mass. 737, 739.

The decree entered in the Superior Court provided for the payment of $750 for attorney's fees, briefs and other necessary expenses resulting from certification to that court. This provision of the decree follows the phraseology of G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444. That amount was awarded for legal services and expenses rendered in connection with the certification from the board to the Superior Court. Until this amendment to c. 152, the amount of fees of attorneys, like those of physicians, and of charges of hospitals for services rendered under said chapter, was subject to the approval of the board. See G. L. (Ter. Ed.) c. 152, §§ 10, 13; *Gritta's Case*, 241 Mass. 525; *Silva's Case*, 305 Mass. 380; *Whittaker's Case*, 319 Mass. 582. The fixing and approval of such fees and charges were incidental to the establishment of awards to injured employees or their dependents, and it was thought wise to leave such matters to the board charged with the administration of the workmen's compensation act so that there would be no interference with accomplishing the main and principal object of the act, which is to confer its beneficial advantages upon those who have sustained a loss because of an industrial accident. The fixing of fees and charges was for the protection of these statutory beneficiaries.

There may be strength in the insurer's contention that the award is too high, for it is difficult to see from a general view of the situation how the reasonable value of the services rendered in connection with the hearing in the Superior Court could approximate the figure mentioned in the decree.

There is nothing in the record showing the amount of work done by the attorney, the necessary time spent in its performance, or the various other details which must be considered in arriving at a fair estimate of the value of his services. See *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569. We are not impressed with the argument that a certain percentage of the total amount of the award should be considered. With no report of the testimony and findings, the only question presented is whether it was possible on any evidence that could have been introduced for the judge to act within G. L. (Ter. Ed.) c. 152, § 11A, and to reach the conclusion which he did. *Hale* v. *Blanchard*, 242 Mass. 262. *Brogna* v. *Commissioner of Banks*, 248 Mass. 241, 243. *Levinson* v. *Connors*, 269 Mass. 209, 210. Such a record "leaves open the possibility that the rulings of the judge on what he had before him were right." *Staples* v. *Collins*, 321 Mass. 449, 452. Consequently, no error of fact or of law being made to appear, we cannot modify this provision of the decree.

The matter of allowance of attorney's fees, briefs and expenses in this court will be settled by a separate order of a single justice upon presentation of an itemized list of the expenses.

*Decree affirmed.*