MARGARET McCABE *vs.* LIGGETT DRUG COMPANY, INC.

Suffolk. March 2, 1953. — April 30, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Sale,* Warranty. *Proximate Cause. Evidence,* Opinion: expert. *Notice.*

There was a sale by description giving rise to an implied warranty of merchantability under G. L. (Ter. Ed.) c. 106, § 17 (2), where a customer in a store asked a clerk for one of the metal coffee makers which he had previously seen on sale there and received such a coffee maker from the clerk. [179]

Opinion testimony of an expert that the cause of the bursting apart of a coffee maker was inadequate means of relieving steam pressure developed from boiling water in the lower part of the coffee maker was not improperly excluded where without the aid of such opinion the jury could have found the same cause. [180]

The appearance of a coffee maker purchased by the plaintiff from the defendant and testimony of the plaintiff as to its bursting apart while being used by her in accordance with the instructions furnished with it justified findings that the cause of the explosion was an inadequate outlet in the upper part of the appliance for the escape of water forced up a tube thereto by steam pressure developed by boiling water in the lower part, and that by reason of such defect in design, not obvious to an ordinary person on inspection, the appliance was not reasonably suitable for making coffee and there was a breach of the implied warranty of merchantability. [180–181]

A notice under G. L. (Ter. Ed.) c. 106, § 38, of breach of the implied warranty of merchantability in a sale of a coffee maker of faulty design stated to have taken place at a store of the seller "on or about" a certain date within a period when such coffee makers were on sale at the store was not insufficient in not stating the exact date of the sale or in not stating the name of the person who actually made the purchase at the store. [181–182]

CONTRACT OR TORT. Writ in the Superior Court dated July 22, 1949.

A count in tort was waived by the plaintiff. The action was tried on a count in contract before *Meagher, J.*

*Frank I. Rose,* (*Sumner Kraft* with him,) for the plaintiff.
*Robert N. Daley,* for the defendant.

WILLIAMS, J. This is an action of contract to recover compensation for personal injuries resulting from the use of a metal coffee maker purchased from the defendant. The declaration is in one count and alleges breaches of implied warranties of fitness and merchantability. After a verdict for the plaintiff, the judge, on motion of the defendant and subject to the plaintiff's exception, entered a verdict for the defendant under leave reserved.

There was evidence that on or about May 20, 1949, one Huwe, acting as agent for the plaintiff, purchased a metal coffee maker, called "Lucifer 'Lifetime,'" from the defendant at its store, 1243 Centre Street, Newton Centre. Huwe had seen "this type of appliance displayed or on sale in that particular store about a week before." He had told the plaintiff about it and she had asked him to buy one of the coffee makers for her. On the following day, he went to the store and asked the clerk "if there were any more of the metal coffee makers that . . . [he] had seen on sale." The clerk said that there were and indicated one on the shelf. He asked Huwe "if that was what . . . [he] meant," and Huwe said, "Yes, that is the one . . . as long as it is all metal." The clerk handed Huwe a coffee maker packed in a sealed cardboard carton which he took away and delivered to the plaintiff.

This coffee maker is an exhibit in the case. From our examination it appears to be similar in design to other coffee makers or percolators which are in general use. It consists of three parts, a lower bowl, an upper bowl, and a filter, which are assembled by the operator. All parts are metal, except a rubber collar on the base of the upper bowl which fits into an aperture on the top or neck of the lower bowl. Water is boiled in the lower bowl and under pressure of the steam which is generated rises through a tube into the upper bowl where ground coffee is placed. The water is there mixed with the coffee and forms the beverage which, after the heat is reduced, flows down into the lower bowl. See *Saena* v. *Zenith Optical Co.* 135 W. Va. 795, 798.

The plaintiff used the appliance two or three times and

noticed that the water was slow in coming up into the upper bowl. On the morning of June 9, 1949, she again used it, complying with the written instructions which came with it. The water began to boil and started to come up into the upper bowl. She waited "for it to reach the top" so that she could shut off the gas and remove the appliance from the stove. "It was taking quite a while" and she "looked over it and noticed it was not coming up. It had stopped, [and] then it blew up" in her face. The water and coffee grounds were thrown over her and over the floor, walls, and ceiling by the force of the explosion. The upper bowl which she had inserted firmly into the neck of the lower bowl "flew onto the floor." The plaintiff was burned.

The defendant was notified of the occurrence by letter from the plaintiff's attorney dated June 16, 1949. Therein it was stated that the plaintiff was injured on June 9, 1949, "when the top part of a coffee maker apparently having the trademark 'Lucifer Lifetime' exploded and flew off while being used by her in her home according to the instructions in the circular which accompanied the purchase thereof made at your store on or about May 20, 1949," and that damages were claimed "because the appliance was not fit for the purposes for which it was sold and purchased."

The transaction appears to have been a sale by description. Huwe described the article which he wished to purchase to be one of the metal coffee makers which he had previously seen on sale. The clerk knew to what merchandise he referred and delivered to him a coffee maker of the designated type. The sale carried an implied warranty by the seller that the appliance was a coffee maker of merchantable quality. G. L. (Ter. Ed.) c. 106, § 17 (2). Merchantable quality means that goods are reasonably suitable for the ordinary uses for which goods of that description are sold. *Mead* v. *Coca Cola Bottling Co.* 329 Mass. 440, 442. *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251. *Country Club Soda Co. Inc.* v. *Arbuckle,* 279 Mass. 121, 128. *Agoos Kid Co. Inc.* v. *Blumenthal Import Corp.* 282 Mass. 1, 7. *Frantz Equipment*

*Co.* v. *Leo Butler Co.* 370 Pa. 459. Whether this coffee maker was of such quality depended on its capability, when properly used, to make coffee. This presented a question of fact for the jury. The evidence consisted of the coffee maker and the testimony of the plaintiff concerning the so called explosion. The jury could find that she assembled the parts of the appliance, measured the coffee and water, and applied heat to the water in the lower bowl in accordance with instructions and in the manner that an ordinary person would be expected to proceed in using the appliance to make coffee. The evidence, we think, was sufficient to warrant them in finding why the coffee maker blew up when so used. The appliance had a circular metal filter which fitted over the upper end of the tube in the upper bowl and obviously was intended to hold the coffee grounds in the upper bowl while permitting the water to come up from the lower bowl. This filter was similar in shape to an ordinary metal bottle cap. It had thirty-six small notches in its lower edge which rested on the bottom of the bowl and encircled the opening of the tube. The filter was held in position over the tube by a plunger equipped with springs which reached down into the tube. The plaintiff offered in evidence the opinion of an expert that the area of the notches of the filter was inadequate to provide for the release of the pressure which developed from the boiling water; that this area would be further decreased by the "congealing" of the coffee grounds; and that the pressure in the bottom section, having inadequate release, would build up to a point where it would have an explosive effect. Although this evidence might well have been admitted we think there was no reversible error in excluding it because the jury without the aid of expert testimony could have found the cause of the explosion to have been that which was suggested. *White* v. *Ballou*, 8 Allen, 408. *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496, 500. *Deerfoot Farms, Inc.* v. *New York, New Haven & Hartford Railroad*, 327 Mass. 51, 55. Where it is a matter of common knowledge and experience that a process will uniformly or generally produce a certain re-

sult a jury of ordinary men may infer the cause from proof of the effect. *New England Glass Co.* v. *Lovell,* 7 Cush. 319. Here it may be presumed the jury knew that the operation of the coffee maker depended on the pressure of steam on the water in the lower bowl and that the only means provided for relieving this pressure was the tube by which the water would escape into the upper bowl.

The fact that the apparatus violently burst apart in the manner described showed that the accumulating pressure was not being released and in the absence of explanation was itself evidence of a defective condition. *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509, 512. *Doherty* v. *Booth,* 200 Mass. 522, 525. *Sullivan* v. *Reed Foundry Co.* 207 Mass. 280, 283–284. *Draper* v. *Cotting,* 231 Mass. 51, 63. The jury could find that the explosion was caused by the failure of the water to rise into the upper bowl and from an examination of the notches in the filter that this failure was due to an inadequate outlet and the clogging effect of coffee grounds which would collect around the notches.

If the coffee maker was so imperfect in design that it could not be used without the likelihood of an explosion it could be found that the appliance was not reasonably fit for making coffee and therefore not merchantable. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 452. *Universal Fixture Corp.* v. *Mark,* 247 Mass. 85, 88. *Raymond Syndicate, Inc.* v. *American Radio & Research Corp.* 263 Mass. 147, 154. *Paradis* v. *A. L. Nichols Co.* 299 Mass. 364. *Bruns* v. *Jordan Marsh Co.* 305 Mass. 437, 443. The plaintiff was not deprived of her right to rely upon the implied warranty either by a failure to inspect or by an inspection before use, as it could have been found that the defect in design would not be obvious to an ordinary person on inspection. *Procter* v. *Atlantic Fish Companies, Ltd.* 208 Mass. 351, 354.

The judge was not justified in entering the verdict for the defendant on the ground that, as contended by the defendant, the notice required by G. L. (Ter. Ed.) c. 106, § 38, was insufficient, in not stating the exact date of the purchase or the name of the purchaser. Information as to the

exact date of the sale was here of little if of any importance to the seller. See *Johnson* v. *Kanavos*, 296 Mass. 373, 377–378. The defendant had been selling these coffee makers over a period of a week. Presumably all were constructed alike. No claim was made that there was a defect in the particular appliance which was not common to all. . The notice indicated a date of purchase within the period when they were being sold and was sufficient to enable the defendant to examine into any fault in their common design. The name of the person who actually made the purchase did not enter into the transaction with the defendant and the failure to state it did not invalidate the notice. See *Blanchard* v. *Kronick*, 277 Mass. 31, 33; *Baum* v. *Murray*, 23 Wash. (2d) 890, 902.

The plaintiff's exceptions are sustained. The verdict for the defendant under leave reserved is set aside. The original verdict for the plaintiff is to stand and judgment is to be entered for the plaintiff on that verdict.

*So ordered.*