MARY BENAVIDES *vs.* STOP & SHOP, INC.

Suffolk.    April 1, 1963. — May 31, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Sale,* Warranty.

At the trial of an action against the proprietor of a retail store for breach of warranty of merchantability of soap sold by the defendant to the plaintiff, evidence merely that upon getting some of the soap in her eye while washing the plaintiff experienced a severe burning sensation, that in the next few days there was a discharge from and blurred vision of the eye, and that she suffered prolonged discomfort from the eye, left it conjectural whether the soap was deleterious and whether it was the cause of the plaintiff's trouble and discomfort, and did not warrant a finding for her.

TORT. Writ in the Superior Court dated June 27, 1961.

The action was tried before *Swift,* J.

*Andrew R. Linscott* for the defendant.

*Joseph W. Breen* for the plaintiff.

SPALDING, J.   In this action the plaintiff seeks to recover for injuries alleged to have been sustained by her by reason of a breach of warranty of merchantability.

The evidence was as follows: Two or three weeks prior to September 8, 1959, the plaintiff purchased four or five bars of Ivory soap at one of the defendant's retail stores. The labels on the soap stated that it was "99 44/100% pure." The plaintiff kept the soap in her kitchen cabinet and on the evening of September 8, 1959, she took a bar of it from the cabinet and carried it into the bathroom. After unwrapping it, she broke the bar in half, lathered her hands and began to wash her face. Some soap got in her eye and she felt a burning sensation unlike any she had previously experienced, and the eye began to discharge "thick yellow mucus." The burning sensation and the discharging continued throughout the night. She rinsed the eye during the night with cold water; the discharge continued and the following morning the eye was red, but there was "no difference in vision."

The plaintiff went to work that day but her eye was "quite irritated"; it was "watering" and "discharging" and was "bothering her." The nurse at her place of employment put some drops in her eye but these did not "give her much relief." She returned to work on the following day (September 10), and the condition was about the same; the "plant nurse gave her some more eye drops." On September 11, "the vision of the eye was blurred" and the plaintiff went to the outpatient department of the Massachusetts Eye and Ear Infirmary where her eye was tested by a doctor. More drops were placed in her eye and the plaintiff was given ointment and an eye patch. The eye was uncomfortable and painful. The plaintiff returned to the clinic on the following day and the doctor "gave her further treatment and ointment to use." She was advised to rinse the eye with hot water. The blurring of vision cleared up within a week but the pain persisted; her eye "continued to ache off and on until February 1960." On September 16, the plaintiff went to the store where she

had purchased the soap and "told the manager what had happened."

At the close of the evidence the defendant moved for a directed verdict, which was denied, subject to its exception. The jury returned a verdict for the plaintiff. The case comes here on the defendant's exceptions to the denial of its motion and to two rulings on evidence.

We are of opinion that the motion for a directed verdict ought to have been granted.

Other than the occurrence of the injury, the plaintiff introduced no evidence tending to prove that the soap was not fit for the purpose for which it is normally used, or that the soap was other than a pure, bland, neutral soap as warranted by the statement appearing on the package that it was "99 44/100% pure." G. L. c. 106, § 2-314.[1] _Taylor_ v. _Jacobson_, 336 Mass. 709, 713. Where recovery has been allowed in cases of this sort it will usually appear that there was evidence, other than the mere occurrence of injury, of a breach of warranty from which a causal connection between the breach and the injury could reasonably be inferred. _Cleary_ v. _First Natl. Stores Inc._ 291 Mass. 172. _Flynn_ v. _Growers Outlet, Inc._ 307 Mass. 373, 376–377. _Botti_ v. _Venice Grocery Co._ 309 Mass. 450, 452.

The plaintiff did not put in evidence the soap used or a chemical analysis of it. See _Bradt_ v. _Hollaway_, 242 Mass. 446, 448–449. Nor did she introduce any evidence from which the jury could reasonably infer that the product was unsuitable. Such evidence could include testimony concerning outward manifestations of unfitness or the fact that other persons using the product also were harmed. _Cleary_ v. _First Natl. Stores Inc._ 291 Mass. 172 (evidence of mould in a can of cocoa coupled with expert testimony that the product was totally unfit for human consumption). _Flynn_ v. _Growers Outlet, Inc._ 307 Mass. 373, 376–377 (expert testi-

---

[1] Section 2-314 provides, in part, that: ". . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . (2) Goods to be merchantable must at least be such as . . . (c) are fit for the ordinary purposes for which such goods are used; and . . . (f) conform to the promises or affirmations of fact made on the container or label if any."

mony that sausage meat was contaminated and evidence that several consumers became ill). *Botti* v. *Venice Grocery Co.* 309 Mass. 450, 452 (evidence that macaroni tasted "strong or bad" and that others who ate it became ill). See Harper and James, Torts, § 28.12.

There may be situations where an injury is sustained in circumstances which will permit an inference to be drawn that the product causing the injury was not merchantable, provided the injury was such as would not generally occur unless the product was defective. See, for example, *Mead* v. *Coca Cola Bottling Co.* 329 Mass. 440 (bottle exploding supports the inference that the bottle was defective); *McCabe* v. *Liggett Drug Co. Inc.* 330 Mass. 177, 180–181 (coffee maker exploding supports the inference of defect). But here the evidence does not warrant a finding that the soap proximately caused the plaintiff's injury.

It is common knowledge that a pure, bland, neutral soap will sometimes produce a slight, temporary burning sensation when introduced into the eye. *Lovely's Case,* 336 Mass. 512, 515. No evidence, however, was offered tending to explain the severe burning sensation, the discharging, the impairment of vision, and the prolonged discomfort. These are not matters of common knowledge. See, for example, *Bouffard* v. *Canby,* 292 Mass. 305, where it was said at page 309, "There being no medical evidence other than that the infection followed and developed from the wound, the jury could not have inferred that the infection resulted from the use of unsterile appliances." Although the plaintiff received medical treatment, there was no medical evidence tending to show a probable causal connection between the use of the soap and the injury. *Josi's Case,* 324 Mass. 415, 417–418. *Berardi* v. *Menicks,* 340 Mass. 396, 401. There was, on the other hand, medical evidence introduced by the defendant which pointed in the opposite direction. We have not overlooked the hospital record of the eye and ear infirmary which was introduced in evidence. There is nothing contained in that record which would establish a causal connection between the plaintiff's ailment and the soap.

The plaintiff was not bound to exclude every other possible cause for her illness, but she was required to show that the probable cause was the soap.   We are of opinion that the evidence did not establish beyond conjecture that the soap was deleterious and that the ailment of which the plaintiff complains was due to the soap rather than to the many other factors that will cause eye disorders.   *Gracey* v. *Waldorf Sys. Inc.* 251 Mass. 76, 78–79.   *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, 550.

*Exceptions sustained.*

*Judgment for the defendant.*