*Northern District*

No. 6157

**ARPI VAHE**

v.

**CARDULLO'S CATERING, INC.**

*Present*: Connolly, P.J. & Durkin, J.

Case tried to *Viola J.* in the Third District Court of Eastern Middlesex No. 3110 of 1962.

(This opinion has been abridged)

*Connolly, J.* The plaintiff's declaration in this action of contract alleges a breach of warranty of merchantability under the provisions of the Uniform Commercial Code,

G.L. c. 106, §2-314. The case involves the alleged presence of a bone or foreign substance in a fillet of fish, purchased from the defendant, a retail fish dealer.

The defendant's answer consists of a general denial and a plea of contributory negligence.

The plaintiff seasonably filed eleven requests for rulings of law and claims to be aggrieved by the denial of request No. 1. That Request Is:

1. The evidence, together with the pleadings, warrants a finding for the plaintiff.

The court denied this request and made the following Findings and Rulings:

"On March 8, 1962 at around 5 p.m., plaintiff purchased from defendant an order of pre-cooked and heated fillet of haddock. The defendant was engaged in the business of selling to the general public pre-cooked and fresh fish. Plaintiff arrived home around 5:30 p.m. and proceeded to eat the fillet that was still warm. When partly through the fillet, she felt something sharp in her throat. It was her belief a "fish bone had become lodged in her throat." She experienced a "choking sensation, and felt groggy." To "push it down" she drank coffee and ate dry bread, but the feeling of pain

and nausea persisted. Around 7:00 p.m. she visited a girl friend and while there again felt the sharp pain in her throat and partook of more food, hoping that by doing so, the bone would become dislodged. The uncomfortable feeling continued and at around 11:00 p.m. she returned to her home, and there ate some "Chinese food", particularly "Chinese cooked spare ribs." Her husband had purchased this food pre-cooked and had brought it home around 10:45 p.m. Later she retired, but because of the continuing discomfort, arose around 1:45 a.m. and proceeded unaccompanied to a hospital emergency room, where she, as her history told the authorities "she had eaten some fish and spare ribs around 11:00 p.m. (of previous day) and thought she had swallowed a fish bone."

"X-rays of the throat taken proved negative. A direct laryngoscope test, and esophagus examination into the larynx showed no sign of injury or foreign substance."

"Against the advice of the hospital authorities, she chose not to remain for further tests, and around 4:30 a.m. signed a "discharged against advice" form, and stated she did so because she was in great pain and preferred being at home rather than the

hospital. No fish bone was ever found by the plaintiff."

"The fillet purchased by the plaintiff was free of any fish bone or other foreign matter that could have resulted in any injury to the plaintiff. Accordingly, I find for the defendant."

The finding of the court that the fillet in question was free of any fish bone or other foreign substance that could have resulted in injury to the plaintiff was the only one possible under the evidence.

Since there was no evidence of a causal relationshp between the eating of the fillet and the injury to the plaintiff, a finding for the defendant was required. *Benavides* v. *Stop & Shop, Inc.,* 346 Mass. 154 (Soap) *Harrod* v. *Tower Company,* 346 Mass. 532 (Beauty Product) [See also: *Webster* v. *Blue Ship Tea Room, Inc.,* 347 Mass. 421 (Fish bone in fish chowder. No liability.) ]

*There being no error, the report is dismissed.*

Maurice H. Kramer of Boston for the Plaintiff.
John A. White of Boston for the Defendant.