Welsh, J.
This is an action sounding in tort, in which plaintiff seeks compensation for injuries sustained on December 17, 1984 as a result of an assault and battery by another passenger occurring on one of defendanf s rapid transit trains in the vicinity of the Field’s Corner Station.
The answer denied liability and asserted that the intervening acts of a third person were the cause of plaintiffs injury.
The case was originally tried in the Quincy District Court on January 18,1989. The trial judge found for the plaintiff in the sum of $45,000.00. An appeal to the Appellate Division resulted in a remand to the Quincy District Court with an orderfor a new trial. Gallagher v. Massachusetts Bay Transit Authority, 1990 Mass. App. Div. 172, 175. In accordance with the remand order, the case was assigned for trial. The same judge presided over the trial which resulted in a judgment for the plaintiff in the same amount.
The report as established by this Appellate Division indicates that the defendant claims to be aggrieved by the denial of its motion that the trial judge recuse himself, by the denial of its motion to quash a subpoena for certain records of the MBTA, by the trial judge’s order to create a document statistically correlating occurrences of crimes at the various stations on the defendanf sRed Line, so called, and by the judge’s disposition of certain requests for rulings.
We determine: 1) that there was no prejudicial error in the judge’s denial of the defendant’s motion that he recuse himself; 2) that neitherthe denial of the defendant’s motion to quash plaintiffs subpoena duces tecum, nor the order to procure a document based upon data electronically kept by the defendant is properly before this Appellate Division; 3) that there was no prejudicial error in the disposition of the request for rulings reported; 4) that the award of damages was excessive as a matter of law in view of the evidence contained in the report.
We remand the case to the Quincy Division for anew trial on the issue of damages.
There was evidence tending to show the following: On the morning of December *10 17,1984 at approximately 11:15 AM., the plaintiff boarded a southbound MBTA train at South Station. His destination was the Ashmont Station. The car was empty when he entrained. At Columbia Station a group of 7 or 8 boisterous youths entered the car in which the plaintiff was a passenger. They engaged in loud conversation among themselves and listened to music on a large portable radio commonly referred to as a “boom box.” Although the plaintiff did not initially feel threatened, two of the group approached him and began to engage him in conversation. This included an inquiry where the plaintiff lived and some comment about plaintiff’s attire. When queried as to what he did for a living, the plaintiff, who was unemployed at the time, responded, “Nothing.” At this point the plaintiff was asked, “How come a whitey like you doesn’t do anything for a living?” The plaintiff began to be afraid and decided to alight from the train at the Field’s Comer Station. While attempting to leave, plaintiff was struck in the face and pushed to the ground. During the attack, plaintiff called for help but to no avail, although there were MBTA personnel present. When the plaintiff was pushed out of the train, he landed on the platform at Field’s Comer. Notwithstanding plaintiff’s continued pleas forhelp, the train doors were closed and the train moved out of the station. After approximately 10 minutes in which plaintiff lay on the platform calling for help, an employee of the MBTA in a collector’s booth on the opposite side of the station came to offer assistance.
The evidence showed 2,253 criminal-acts reported on the Red Line in 1984. Field’s Corner had the highest incidence of such acts, namely 324 (over 14%) of the total. No MBTA police were assigned to ride the Red Line trains from Washington Street Station to Ashmont Station, nor were there any MBTA police assigned to the Field’s Corner Station. There was an MBTA inspector assigned to Field’s Comer, Savin Hill, and Columbia. Although he had police powers, he had many other duties and had only made three arrests in his 18 years of service.
The plaintiff boarded a subsequent train and was picked up by his wife at Ashmont.
A week after the incident, plaintiff saw his doctor concerning his complaint of a pain in the knee and about the facial area. The doctor prescribed Valium and Advil. He was confined to his home for one month following the accident due to a swollen knee. The plaintiff continued to take Valium 3 times a day for two months and 2 times a day for two years. He also takes Advil twice a day. The plaintiff was unemployed at the time of the incident. Plaintiff testified he was unable to play golf and was impeded somewhat in his walking. He used to walk five miles a day and now only walks around the block. He complained of frequent nightmares, loss of appetite and weight. There was no evidence of lost earning capacity. (Indeed, the judge in his findings stated that no award was made for lost wages). There was no expert medical testimony offered. The plaintiff had a heart condition which predated the assault. He was 63 years old at the time of the incident and complained that the incident continues to affect his life.
1. There was no error in the judge’s decision not to recuse himself. The sole reason assigned for the motion for recusal was the judge’s presiding over the initial trial and had made afinding for the plaintiff. “The alleged bias and prejudice to be disqualifying must arise from an extrajudicial source and not from something learned from participation in the case” or from a hearing in a related proceeding. Kennedy v. District Court of Dukes County, 356 Mass 367, 379 0969); Howe v. Prokop, 21 Mass. App. Ct. 919, 920 (1985). Prior adverse rulings to the moving party do not, of themselves, require recusal. Foley v. Foley, 27 Mass. App. Ct 221, 222 (1989). Nor does the formation of an opinion based upon information developed in the course of the prior related proceedings. Adoption of Seth, 29 Mass. App. Ct. 343, 351 (1990). Disqualification is not mandated even if we were to assume there might have been occasional acerbic exchanges between the judge and defense counsel. See Commonwealth v. Polydores, 24 Mass. App.
Ct. 923, 924 (1987).
2. The judge was not required to allow plaintiff’s motion to quash the subpoena duces tecum. The subpoena called for production of all records within the custody of *11 the MBTA of incidents involving reports of assaults, robberies and vandalism occurring on the Red Line, so called, in 1984, duty assignment rosters for policing the line in 1984 and proposals for additional policing during the year in question and for the immediately preceding and following years. This information was essential to the development of the plaintiffs case and was not readily available from any outside source available to plaintiff.
In order to establish a primafacie case, plaintiff was required to prove that the attack upon the plaintiff was a reasonably foreseeable risk created by a breach of duty to protect himfromviolencefromotherpassengers. Quigley v. Wilson Line of Mass., Inc., 338 Mass. 125, 128 (1958). The test is one of utmost care and diligence. The duty to anticipate violent attacks on defendant’s passengers by other passengers and even strangers is correlated to notice imputed to the defendant of the likelihood of such attacks. Magaw v. Massachusetts Bay Transportation Authority, 21 Mass. 129, 135 (1985). The report indicates that the documents were produced at the trial. Upon learning that the records comprised 12 volumes and that in approximately one hour with the computer at hand, the defendant could generate a compilation of the relevant information in a more convenient and usable form, the court ordered the defendant to produce a print-out showing all Part I and Part II crimes as defined by the F.B.I. and broken down by station for 1984. The judge was well within his discretion in determining that compliance with the subpoena was not unduly burdensome or oppressive and was likely to furnish evidence relevant to the matter in issue. See In The Matter Of Paul Pappas, 358 Mass. 604, 612 (1971); Cronin v. Strayer, 392 Mass. 525, 535 (1984).
The defendant contends the trial judge exceeded his authority in requiring the defendant to produce a computer print-out showing the reported occurrences of criminal behavior broken down by station on the Red Line route. We reject this contention. It is clear that the trial judge had the discretion to admit as a matter of convenience the computer print-out as a summary of and compilation is not in itself a record kept in the ordinary course of business under G.L.c. 231, §78; it was nonetheless admissible in the discretion of the trial judge. Dyecraftsmen, Inc. v. Feinberg, 359 Mass. 485, 487 (1971).
As to whether the judge exceeded his authority or abused his discretion in requiring the defendant to generate and produce at trial a compilation of criminal incidents for 1984 by station on the Red Line, this question is not properly before the Appellate Division. The jurisdiction of the appellate division is limited to questions of law reported to it and no others. James J. Derba, Inc. v. Hamilton Service, Inc., 358 Mass. 127, 130 (1969). The authority extends to questions necessarily attendant on those reported. Henry L. Sawyer Co. v. Boyajian, 303 Mass. 311, 312 (1939). The judge’s authority to require the defendant to generate the document in question is not “necessarily attendant” on the questions of law reported.[1] It relates essentially to his authority to conduct the trial and to manage the litigation before him and not to the substantive issues of law before this division.[2]
If we assume arguendo that the judge’s ruling on the defendant’s “Motion for Protective Order/Motion To Strike” (which might fairly be characterized as a motion in limine to prevent the reception of the document so produced into evidence) is the sort of ruling that may properly be reviewed in the Appellate Division, then it is clear that defendant’s failure to comply with Rule 64(a), Dist./Mun. Cts. R Civ. P., precludes it from obtaining appellate review of the judge’s order admitting the document into evidence.The record before us does not reflect that a requestfor report
*12 was made at the time of the ruling. Nor does it appear that the request for report on such evidentiary ruling was reduced to writing and filed with the clerk within 5 days of the hearing of all evidence. Such failure constitutes a waiver of any supposed error in such evidentiary rulings. Gordon v. Sales, 337 Mass. 35,37 (1958).
There was no error of law manifested in the judge’s disposition of requests for rulings of law as to the liability aspects of this case. Without stating seriatim each request verbatim, the judge correctly denied a request predicated on the assumption that the attack had to occur in the presence of the operator of the train, or within his hearing and knowledge to afford him an opportunity to take measures to prevent it. “(F)oreseeability is established if the carrier has treason to know, from past experience, that there is alikelihood of conduct on the part of third persons in general which is likely to endanger the safety of [its invitees], even though the carrier has no reason to expect it on the part of any particular individual.” Magaw v. Massachusetts Bay Transportation Authority, 21 Mass. App. Ct. 129, 135 (1985). The assault in this case was neither so unavoidably routine nor so highly improbable in view of the record of incidents at the Field’s Comer Station as to be unforeseeable by the defendant. Id. at 135, fn.6. Therewas sufficient evidence, contrary to thedefendant’srequestforruling, to show that defendant had reason to know of such dangerfrom past experiences. The 1984 figures showing criminal incidents on the Red Line with a significant percentage at Field’s Comer would warrant the judge’s finding in that regard. It was not necessary that the plaintiff demonstrate a substantial identity of circumstances between the present incident and the sort of incidents reported in the past, since the theory of liability is based upon the supposed deterrent effect that would likely be produced by apolice presence either on the train or at the station. The judge could reasonably have concluded that as a deterrent to crime the defendant had a duty to provide uniformed security personnel in the station at the time of the assault. Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 793 (1988). He reasonably inferred that the attacker more probably than not might have been deterred from carrying out such an assault if a \uniformed security guard had been present either on the train or at the station. Id. at 793.
We conclude that the judge erred with respect to his disposition of certain requests for mlings on the matter of damages and in the amount of the award. There were no hospital or other medical records introduced into evidence. There was no expert witness testimony on the question of causation. The judge was asked to rule, inter alia, that there was insufficient medical evidence to support the plaintiff’s claim for injuries. The judge denied this request, asserting that the injury to the plaintiff s knee sustained by the fall to the platform has continued uninterrupted and has resulted in limitations to his activities. The plaintiff first saw a doctor a week after the incident. There was no evidence of a fracture. The doctor prescribed Valium and Advil. He remained at home for one month due to a swelling of the knee. There was no evidence of lost wages. He complains of nightmares, loss of sleep and loss of weight but there was no expert testimony or other medical evidence of a causal relationship to the injury sustained. Nor was there evidence of causal relationship between the plaintiff’s stated inability to play golf and the knee injury. The record is silent on whether he saw a doctor after the physician who treated him a week after the incident, and a single visit to his own physician about 6 weeks after the accident. There was no evidence of the fair value of the medical services rendered, nor was there evidence of the value of any future medical expenses to treat the plaintiff.
The question of law that arises is when the issue is whether the damages awarded are excessive if it appears that the award is greatly disproportionate to the injury proved. Bartley v. Phillips, 317 Mass. 35, 41 (1944). As an appellate court, this division is constrained by the principle that an award of damages must stand unless there was an abuse of discretion amounting to an error of law. Id. at 43. Discretion in this context implies an absence of arbitrary determination, capricious disposition or whimsical thinking. Davis v. Boston Elevated Railway, 235 Mass. 482, 496 (1920).
*13 The fifth request for ruling on damages asked the judge to rule that the extent of damages from injuries [in the case at bar] requires competent medical expert testimony. The judge erred in denying the request “... [W]here the causation between an accident and the resulting physical or psychological ramifications is not a matter of common knowledge, the proof must rest on expert medical testimony.” Foley v. Kibrick, 12 Mass. App. Ct. 382, 385 (1981). Although there is no requirement that causal connection between the extent of injury and the negligence be shown solely by expert testimony, [See McAuliffe v. Metcalfe, 289 Mass. 67, 69 (1935)] it cannot be left to conjecture and surmise. This is especially true where, as here, a component of the plaintiffs complaint is emotional distress or psychological duress allegedly based upon the injuries sustained. See Anderson v. W. R. Grace & Co., 628 F. Supp. 1219 (D. Mass. 1986). As was the case in Weinberg v. Massachusetts Bay Transit Authority, 348 Mass. 669 (1965), the evidence here warrants afindingthatthe plaintiff suffered some immediate injury and an award of some damages was justified. However, the length of the claimed incapacity even to the date of trial is beyond common knowledge or experience and could not be established without medical testimony. Id. at 671; Benavides v. Stop & Shop, Inc., 346 Mass. 154, 157 (1963).
The case is remanded for a new trial on the issue of damages.
So ordered.

. Presumably the MBTAmighthave "tested” the judge’s authority to order the generation of the document by refusing to comply. Any resulting judgment of contempt might have been appealed. Rule 45(f) Dist./Mun. Cts. R. Civ. P.; Nickerson v. Dowd, 342 Mass. 462, 465 (1961).

 Usually, such orders should be conditional upon payment by the plaintiff to the defendant of the reasonable cost of generating the document See Application of a Grand Jury of the State of New York, 8 Mass. App. Ct. 760, 768-769 (1979).